[L. A. No. 5213. Department Two.—October 7, 1919.]

EARL R. OSBORN et al., Respondents, v. SILAS HOYT
et al., Defendants; MARY E. HICKS et al., Appellants.

[1] ACTION TO DECLARE TRUST—VIOLATION OF AGREEMENT TO MAKE
WILL—PLEADING—AGREEMENT AGAINST PUBLIC POLICY—AVERMENT
OF CONCLUSION OF LAW—ISSUE NOT RAISED.—In an action to have
a trust declared in real property based on the alleged violation of
a written agreement to make a will, the denial in the answer that
there was any such agreement, but if so, it was against public pol-
icy and wholly illegal and void, was merely the averment of a
conclusion of law, and the question of the violation of public pol-
icy was not put in issue.

[2] ID.—ACTION IN LIFETIME OF PROMISOR NOT PREMATURE.—An action to
declare a trust in real property based on the alleged violation of a
written agreement to make a will was not prematurely commenced
before the death of the promisor, where the agreement was to de-
vise specific property and the same was virtually all of his estate.

[3] ID.—EVIDENCE—ORAL TESTIMONY OF IMPROVEMENTS. — In such
action, oral testimony as to certain improvements made upon the
property and how they tended toward the amelioration and better-
ment of the promisor's condition was competent to explain the cir-
cumstances of the agreement and the matters to which it related.

[4] ID.—ADEQUACY OF CONSIDERATION FOR CONTRACT—IMPROVEMENTS.
The making of improvements on real property tending toward the
amelioration and betterment of the physical and temporal condi-
tion of the promisor, is an adequate consideration for an agreement
to will the property to the persons making the improvements.

[5] ID.—UNCERTAINTY IN AGREEMENT—PLEADING.—In such an action,
the grantees of the promisor cannot complain of any uncertainty
in the agreement where the promisor's duty under it is clearly
expressed, and there is no denial in their answer of the allegation
in the complaint that their deed made after the agreement was
without consideration.

[6] DEED—LACK OF CONSIDERATION—EFFECT OF.—Where a deed is
given without consideration to grantees possessing full knowledge
of the rights of the persons injuriously affected by it, no equitable
considerations are available to them.

[7] APPEAL—ERRORS—WHEN NOT REVIEWABLE.—Alleged errors asserted
for the first time on appeal cannot be considered.

APPEAL from a judgment of the Superior Court of
Los Angeles County. W. A. Anderson, Judge Presiding.
Affirmed.

The facts are stated in the opinion of the court.

H. C. Millsap and F. E. Davis for Appellants.

Frank C. Collier and John Schlegel for Respondents.

MELVIN, J.—Plaintiffs sued to have a trust declared in their favor to certain real property which, as alleged, had been deeded by Silas Hoyt, in fraud of plaintiffs and in violation of their rights, to said Hoyt's daughters, defendants Mary E. Hicks and Rachel H. Jolley, charged with full knowledge of the right of plaintiffs and of the fraud. The asserted rights of plaintiffs arose from a written agreement by the terms of which Silas Hoyt promised to make a will giving and devising to plaintiffs all of his right, title, and interest in and to the land in question which he then had or might thereafter acquire. During the trial Silas Hoyt died. A decree was given in favor of plaintiffs to the effect that upon the death of Hoyt plaintiffs became the owners and entitled to the possession of the land and that defendants, Mary E. Hicks and Rachel H. Jolley, hold the land in trust for plaintiffs, and commanding that they execute a proper deed of the property to plaintiffs. From the judgment Mrs. Hicks and her sister and their husbands, who were joined with them as defendants, take this appeal.

A most interesting state of facts is developed from this record. Hoyt was an eccentric man living alone upon wild land in Big Tejunga Canyon, in Los Angeles County. His daughters had long been alienated from him and were living in the east. Plaintiffs desired the hunting privileges on this land and went there to gain permission from the occupant. That was in 1902. They found Mr. Hoyt a feeble man, eighty-two or eighty-three years of age. He was in abject poverty; was very weak physically, and was living in a filthy log cabin. The hunters divided their food with the feeble and apparently starving man and were glad to see him apparently growing stronger. Their interest in him grew and during the years following they did much to make his surroundings better and his physical condition more comfortable. Among other things they directed him in the matter of changing his occupation of the land from that of a mere squatter to a claimant of rights which later culminated in his securing a

CLXXXI Cal.—22

patent to the land (160 acres in area) in the early part of 1913. They piped water to his cabin and garden; installed ditches that enabled him to irrigate a garden patch; built a good road from near the mouth of the canyon to his property (a distance of about three miles); built a clubhouse on the land and stocked it with provisions to which the old man was given access without charge; furnished a stable and feed for his horses; financed the survey of the property; sent for his daughters so that the old man's last years might be comforted by their society, and did many other things for him.

On June 16, 1902, Hoyt leased to plaintiffs the property occupied by him from July 1, 1902, for the term of five years. Mr. Hoyt agreed to be caretaker and was to receive a rental of $50 per annum. He was to continue to live on the property and the plaintiffs, according to the terms of the lease, agreed "to begin improvements upon the said property within one year" from the date of the instrument. On June 23, 1902, certain water rights were conveyed to plaintiffs and all water rights were conveyed to them by another writing early in July of that year. On September 1, 1902, the agreement upon which this suit is based was executed. Among other things there was the following recital:

"And whereas, the said Chapin and Osborne have undertaken and promised to carry to completion certain improvements upon the said ranch in the Big Tejunga Canyon, and whereas, the said improvements all tend towards the amelioration and betterment of the physical and temporal condition of the said Hoyt, and greatly conduces to his comfort and convenience, and whereas, the said Hoyt appreciates the physical and temporal and financial benefits that accrue to him through such improvements, and whereas the said Hoyt is desirous of providing such a remuneration in return therefor as is within his power." And in consideration of the premises Hoyt promised "to give, devise, bequeath and will unto the said Chapin and Osborne, at the time of his death, all his right, title and interest in and to that certain tract of land above mentioned and being known as Hoyt's ranch, in the Big Tejunga Canyon, county of Los Angeles, state of California, together with all water rights, which the said Hoyt may have as incident or perquisite thereto in accordance with former documents."

This was followed in the next year by a deed from Hoyt of certain mining rights and on April 19, 1912, the plaintiffs executed a writing reciting a consideration of ten dollars, for which they bargained, sold, and surrendered all of their "rights, interest, title and demand in and under that certain lease, . . . dated June 16, 1902, and recorded in book 56, page 25 of leases, Los Angeles county records," together with any claim they might have in any land or premises therein mentioned and the term of years therein yet to come.   The instrument concludes as follows: "And further we hereby certify that said hereinbefore described lease has been canceled and that all our rights thereunder have been terminated."

This is the instrument by which appellants insist the plaintiffs denuded themselves of all claim of every sort against Hoyt or the property.  There is no basis for such contention. The instrument relates to the lease and not to the agreement to make a will.

But the counsel for appellants argue that this release was made in order that Hoyt might comply with the homestead law of the United States and make oath that his application was for his exclusive use and benefit and not directly or indirectly for the use or benefit of any other person.   They contend that the enforcement of the contract to make a will would amount to sanctioning a fraud upon the government, and in this behalf they cite *Anderson* v. *Carkins*, 135 U. S. 483, [34 L. Ed. 272, 10 Sup. Ct. Rep. 905] ; *Hafemann* v. *Gross*, 199 U. S. 342, [50 L. Ed. 220, 26 Sup. Ct. Rep. 80, see, also, Rose's U. S. Notes] , and similar authorities holding that a homestead right cannot be perfected without perjury by the homesteader where there has been an alienation or a contract for alienation.

Respondents insist that there was no real issue upon the supposed violation of public policy in the making and enforcement of the agreement by which Hoyt promised to make a will in their favor.   In their answer the defendants denied that there were written and oral agreements or negotiations between plaintiffs and Hoyt, as set forth in the second amended complaint, but averred that if there were any such contracts, then they were and each was "against public policy and wholly illegal and void," making special reference to the agreement to make a will.   [1]   This was merely the averment of a conclusion of law, unsupported by any allegation of

facts, and we cannot avoid holding that by it the question of the violation of public policy was not put in issue. (*Callahan* v. *Broderick*, 124 Cal. 80, [56 Pac. 782]; *Del Campo* v. *Camarillo*, 154 Cal. 647, [98 Pac. 1049]; *Moran* v. *Bonynge*, 157 Cal. 295, [107 Pac. 312].) Appellants assert, however, that in the absence of demurrer to the answer, and in view of the fact that at the outset their counsel set forth, orally, their theory that the contract was void because in violation of section 2290 of the United States Revised Statutes, [8 Fed. Stats. Ann., 2d ed., p. 555; U. S. Comp. Stats. 1916, sec. 4531], this court must assume that respondents waived the infirmity in the pleadings by proceeding to trial without objection to said statement. But even if we accept this interpretation of the law, the record fails to reveal any proof of the procedure by which Mr. Hoyt obtained his patent or any showing that in fact it was given to him under the homestead law. This conclusion relieves us from all necessity for discussing the very interesting question whether or not an agreement to make a will was an alienation or promise to alienate property in contravention of the statutes of the United States.

[2] There is no force in the contention that the action was prematurely commenced in the lifetime of the testator. It is true that in *Rogers* v. *Schlotterback*, 167 Cal. 35, [138 Pac. 728], this court held that where one is promised a child's share under the laws of succession the statute of limitations does not begin to run until the promisor's death, and that under the contract therein considered James Taylor Rogers "had no enforceable right under his contract in regard to such land or any other property prior to the death of William H. Rogers." In further discussion of the subject the court, by the present chief justice, then an associate justice, used the following language: "He [James Taylor Rogers] had no right of action of any character against William H. Rogers and his grantees at any time during the life of said Rogers, except that possibly he might have maintained an action in equity to obtain a decree protecting him against future possible injury to his rights, as was done in *Van Duyne* v. *Vreeland*, 12 N. J. Eq. 142, 153, where the chancellor said that 'if this court does not interfere now for the protection of the complainant, and secure this property at the death of Vreeland, it may have passed into the hands of a *bona fide* purchaser, and the complainant then be remediless.' The case just referred to was, however, one where the conveyance was clearly and unmis-

takably in violation of the agreement, as the plaintiff was entitled thereunder to *all* the property that the deceased might leave.'' The case at bar comes clearly within the rule announced in the New Jersey case, because the contract now before us was one whereby the promisor agreed to make a will devising *specific* property which was, as alleged in the bill of plaintiffs, virtually all of his estate.

[3] Appellants attack certain rulings of the court admitting oral testimony. All of this testimony was necessary to describe the ''certain improvements upon the said ranch'' and how they tended ''toward the amelioration and betterment'' of the old man's condition. This testimony was competent to explain the circumstances of the agreement and the matters to which it related. (Civ. Code, sec. 1647; *Snyder* v. *Holt Mfg. Co.*, 134 Cal. 324, [66 Pac. 311].)

[4] That the agreement is supported by an adequate consideration is evident from the facts recited herein.

[5] · Nor was the agreement too uncertain for enforcement. Hoyt's duty under it is expressed in no uncertain terms and appellants are not in a position to complain of any other uncertainty, because there is no denial in the answer of the allegation in the complaint that the deed was without consideration. [6] Where a deed is given without consideration to grantees possessing full knowledge (as did Mr. Hoyt's daughters) of the rights of the persons injuriously affected by it, no equitable considerations are available to them. (*Rogers* v. *Schlotterback*, 167 Cal. 35, [138 Pac. 728].)

The finding of fraud was amply supported.

In the closing brief appellants assert that there is no proof that Hoyt died intestate or, having died leaving a will, that he failed to comply with his contract. They also complain because the representative of his estate was not made a party to the action after his death. [7] These alleged errors are asserted for the first time on appeal, and even if material would receive no attention.

The judgment is affirmed.

Lennon, J., and Wilbur, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank, the court filed the following opinion on November 6, 1919:

THE COURT.—In denying the petition for rehearing we would say that it was not intended either to hold or to imply that there need be an issue raised by the pleadings as to the illegality of the contract sought to be enforced by the action in order that the question of illegality may be considered. (*Kreamer* v. *Earl,* 91 Cal. 112, [27 Pac. 735].) But in the present case no facts showing the contract to be illegal were either pleaded, shown in evidence, or found.

The application for a rehearing is denied.

All the Justices concurred.