[L. A. No. 9279. Department Two.—July 19, 1928.]

OWEN ROLLS et al., Appellants, v. W. S. ALLEN, as Executor, etc., et al., Respondents.

Robert M. Clarke and Bowker & Sheridan for Appellants.

Lawrence W. Allen for Respondents.

TYLER, J., *pro tem.*—Action in equity to establish the provisions of a joint and mutual will made by husband and wife. The case was before this court upon a former appeal taken from a decree of distribution in the matter of the estate of John Rolls, deceased. Two questions were there involved—one as to whether the assets of the estate were separate or community property, the other concerned the revocability of the joint and mutual wills made by John Rolls and his wife Leah. (*Estate of Rolls*, 193 Cal. 594 [226 Pac. 608].) It was there held that the property involved was the community property of the spouses. It was further held that the remedy of a person injured by the violation of a contract to make testamentary provision for others, must be pursued in a court of equity and cannot be enforced in a probate proceeding. It is admitted by both parties that the facts in the present appeal are fully stated in the decision of this court in such former appeal. Briefly they show that John and Leah Rolls intermarried in Newfoundland in the year 1889. At the time of their marriage

John Rolls was the father of eight children the issue of a previous marriage, the youngest of whom was five years of age and the oldest seventeen. Four of these children survived the father, the others dying without issue, and they are the plaintiffs herein. Leah Rolls was then the mother of two children by a previous marriage and they are defendants herein. No children were born as the issue of the marriage of John and Leah. In 1891, Rolls and his wife, accompanied by all of his children, left Newfoundland and became residents of this state. The children of Leah did not accompany them. The spouses, during their marriage, succeeded in acquiring community property of the value of about $23,660. On April 16, 1919, they executed a conjoint and mutual will in accordance with the provisions of section 1279 of the Civil Code. The will disposed of all their possessions. It was on one paper and provided that all their property, both real and personal, should be held by the survivor during his or her lifetime, the use and income thereof to be enjoyed by such survivor as he or she should deem best, during the remainder of the life of such survivor. It further provided that at the death of the survivor $1,000 was to be paid to Thomas K. Winsor, a grandson, when he became of age, and $500 to Jessie Rolls, a daughter-in-law, the balance to be equally divided among the surviving children of John Rolls. The will declares itself to be joint as well as several. The following day John Rolls died leaving surviving him his widow and his four children, the issue of his former marriage as above referred to. Upon his death his widow took possession of all the property jointly held by them and enjoyed the use and income thereafter until the date of her death, which occurred on April 11, 1921, a period of some two years. After the death of the husband and on the sixth day of November, 1920, the widow then eighty years of age, made and executed a will whereby she revoked as to herself the conjoint will and devised her share of the community property to her daughters, Maude Agnes Prowse and Sarah Dicks, and to her grandson, Thomas K. Winsor, respondents herein, in certain proportions. No steps were taken during the lifetime of the widow to probate her husband's share of the estate. After her death defendant W. S. Allen, who was named as the executor in each of the wills, presented both

documents to the court for probate, and each was duly admitted and letters testamentary were issued to Allen as executor of each will. After proceedings leading up to distribution were had, Allen as the executor of the conjoint will and the separate will of the widow petitioned the court to have one-half of the property which was jointly held by the deceased parties in their lifetime distributed in accordance with the last will of the widow. The property was distributed as prayed for, and the appeal above referred to was taken with the result as stated. In holding that the question of the right of revocation could not be litigated in the probate court, this court had occasion to say that whether or not appellants ought to prevail in a suit in equity to enforce the disposition made under the mutual will under the peculiar facts was a matter not before it and upon the subject no opinion was expressed. The instant suit is such a proceeding—it being sought to have the terms of the mutual will declared irrevocable and binding upon the defendants who are devisees and legatees named in the second will. The trial court found the last and separate will of the widow revoked her portion of the conjoint will, and that the latter was not executed pursuant to a contract or agreement with the husband, and judgment followed in favor of defendants. Appellants claim that the evidence is insufficient to justify the judgment of the trial court and that it is contrary to law. The pivotal questions here presented are first, whether under the facts the widow could, after the death of her husband, make a valid revocation of their conjoint will; and, second, whether her acceptance of the benefits thereunder for the period stated estopped her from so doing. It is undoubtedly true that one may make a contract binding upon himself to make a particular testamentary disposition of his property and he may validly renounce the power to revoke his will, and equity will enforce such an agreement and not suffer him to defeat his obligation by the making of another will. The same rule applies to the case of mutual wills as equity likewise will assume enforcement of the same when attempt is made by the survivor to impair the terms thereof by subsequent testamentary disposition. In the absence of such a contract or agreement, however, the cases universally hold that either of the comakers may at any time revoke his

part of the will. This principle has found expression in our Civil Code, for it is there provided that a conjoint or mutual will may be revoked by any of the testators in like manner with any other will (sec. 1279). Whoever, therefore, executes a conjoint or mutual will with another does so with notice given by the statute itself that such a will is subject to revocation (*Estate of Rolls, supra*). The mere concurrent execution of mutual wills with full knowledge of their contents by both testators is not enough, therefore, as claimed, to prove a legal obligation to forbear revocation in the absence of a valid contract. A different conclusion would render our statute meaningless when it declares that a conjoint will may be revoked, for if the mere fact of its joint execution is to be deemed evidence of a contractual intention then all conjoint wills, in the absence of other evidence, must be treated and given effect in equity as irrevocable contracts. The language employed by the parties in their conjoint will is purely testamentary in character, there being not one word to indicate a contractual intent, or to indicate that the will was the result of a contract or agreement as would deprive the survivor of his right of revocation. No facts or circumstances surrounding the execution of the will are in evidence, nor is it claimed that there is any agreement other than the will itself which would support or compel the conclusion that the parties intended or undertook to bind themselves and estate irrevocably in the event of the prior death of either. ▆ To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and presumptions will not and should not, in such cases, take the place of proof. (*Edson* v. *Parsons*, 155 N. Y. 555 [50 N. E. 265].) The mere execution of the will in question, therefore, has no tendency to show that there is a contractual obligation to make such a will. (*Monsen* v. *Monsen*, 174 Cal. 97 [162 Pac. 90].) Here the court found that the mutual will in question was not executed pursuant to any contract, and that its reciprocal provisions were referable solely to the marriage relation existing between the parties. There is no evidence that would justify a contrary finding. Nor do we think that the act of the survivor in retaining the income from the estate for the limited period involved, precluded

her from exercising her right of revocation. Had she acted promptly she would have been entitled as of right to one-half of the income. She would also have been entitled to a family allowance and to a homestead out of the estate. Under these circumstances, and considering its modest character, we fail to see how appellants have been prejudiced, as the entire income could not have been more than sufficient for her proper support. In fact, considering her homestead rights, it would seem that appellants were benefited rather than injured by the delay. A different situation might be presented in a case where administration was had and a survivor received certain substantial benefits which he retained and enjoyed. In such a case it might well be argued that he would be estopped to exercise a right to revoke. The decree permits the children of the wife to enjoy the benefits of the estate equally with the children of the husband. It is equitable and just and should not be set aside unless for imperative reasons. The record presents none.

The judgment is affirmed.

Shenk, J., and Richards, J., concurred.