[L. A. No. 15050. In Bank.—October 30, 1935.]

UNION OIL COMPANY OF CALIFORNIA, Respondent, v. RECONSTRUCTION OIL COMPANY (a Corporation) et al., Appellants; LOUIS ELMER PARKER et al., Interveners and Respondents.

[L. A. No. 15381. In Bank.—October 30, 1935.]

UNION OIL COMPANY OF CALIFORNIA, Respondent, v. RECONSTRUCTION OIL COMPANY (a Corporation) et al., Appellants; LOUIS ELMER PARKER et al., Interveners and Respondents.

Newby & Newby and Nathan Newby for Appellants.

Andrews & Andrews for Respondents.

CURTIS, J.—Motions to dismiss appeals from two orders of the Superior Court of Los Angeles County, authorizing the making of an inspection and subsurvey of a certain oil well known as Marine Development Corporation No. 1 well, located on property at the intersection of Creston and Walnut Avenues in the Signal Hill district near Long Beach, California, leased for oil development by defendant Reconstruction Oil Development Company. This oil well is also known as the Hines No. 1 well, and the information secured by such examination and survey was to be offered as evidence by the plaintiff in an application for an injunction against defendants to enjoin them from trespassing by means of whipstocking or "crooked-hole drilling" upon property leased by plaintiff for

oil development adjacent to the Hines No. 1 well of defendants, and taking therefrom oil belonging to the plaintiff. Although the appeals from the two orders are presented separately, the same questions are involved, and we shall consider and discuss them together. The first order from which an appeal is taken was made on August 27, 1934. It was made upon application of plaintiff, properly supported by affidavits to the effect that deviational tools had been used during the drilling of the well and that the officers of the plaintiff had reason to believe that said well had been "bottomed" in territory underlying the surface of property leased to plaintiff for oil development, and that defendants were taking oil therefrom. The order authorized and directed the plaintiff to make a subsurvey of said oil well. Thereafter an appeal from said order was filed by defendants, and when plaintiff attempted to make said survey it was prevented by defendants from executing said order. Thereafter on October 13, 1934, a second order was made appointing and empowering certain qualified experts to make the examination and survey under the supervision of the sheriff of said county. By certain equipment familiar to the oil industry, these experts were to determine to what extent said well deviated from the perpendicular and in what direction. The information thus obtained would obviously be of great value to the plaintiff in establishing as a fact that defendants were trespassing upon its territory and unlawfully taking oil therefrom. The execution of this second order was stayed until October 26, 1934, during which time a writ of *supersedeas* or prohibition to prevent the enforcement of said order was sought in this court by appellants. Said petition was denied by this court, and between November 2, 1934, and November 8, 1934, said survey was in fact made pursuant to said order. At the trial of the action upon its merits, the results of said survey were received in evidence over appellants' objections.

No question is raised on this appeal with reference to the form of the order, and no claim is made that it was not properly framed to fully protect the defendants from any possible injury. The order specifically provided that it was conditioned to become effective only upon the filing of a bond in the sum of $2,500 as security for any damages defendants might suffer by reason of the carrying out of said order. It also provided that plaintiff should pay to defendants the rea-

sonable value of the use of any property or equipment of the latter used in making such survey, and that defendant might designate two persons to observe the making of said survey.

Upon the perfecting of appellants' appeals, respondent moved this court to dismiss said appeals. Said motions are based upon two grounds: (1) That said orders are not appealable orders within the meaning of section 963 of the Code of Civil Procedure of this state, or of any other provisions of the laws of this state, and (2) that all of the questions involved in this appeal from said orders have become moot.

█ Both of these contentions are clearly correct. Section 963 of the Code of Civil Procedure, which necessarily controls the decision of the question of whether or not such orders are appealable, enumerates the judgments and orders of the superior court from which an appeal will lie. (*Sherman* v. *Standard Mines Co.*, 166 Cal. 524 [137 Pac. 249].) Orders of the character of the ones herein involved are not among those enumerated. Of the categories enumerated by said section as appealable, there are only two classifications in which said orders could possibly fall: "a final judgment entered in an action, or special proceeding, commenced in the superior court or brought into a superior court from another court", or "an order granting or dissolving an injunction". Said orders for the examination and subsurvey of appellants' oil well do not fall within either of these categories.

█ Such an order is not a final judgment. It is true that a final judgment is not necessarily the last one in the action and the term "final judgment" is not limited to a decree finally determining all issues presented by the pleadings. Sometimes the term "final judgment" has been applied to a final determination of a collateral matter, *distinct from the general subject of litigation,* affecting only the particular parties to the controversy and finally settling the same. *Sharon* v. *Sharon,* 67 Cal. 185 [7 Pac. 456, 8 Pac. 709], and other authorities are cited by appellants in support of their claim that the instant case is such a final judgment. Said case is cited as holding that "a final judgment that is conclusive of any question in a case is final as to that question". But this quotation is of course not true in the sense that every determination which is conclusive of any question in a case is appealable. Such construction would lead to the absurdity that every ruling of a trial judge finally determining any

question, even as to the admissibility or nonadmissibility of evidence, would be deemed appealable as a final judgment. The orders herein, both on their face and in their effect, are inherently different from the orders held to be final judgments in the authorities relied upon by appellants. The matters involved in the authorities cited were clearly collateral matters in that they did not go to the merits of the issues involved in the main action. In some instances they involved different parties from those named in the main action, and in all cases the determination of the issues presented affected in no degree the final determination of the issues presented in the main action. The orders herein involved, on the contrary, are important and essential to the correct determination of the main issue, that is to say, the question of the trespass of the appellants and the misappropriation of oil from respondent's land, and were made as a necessary step to that end. ▮ They were made in the exercise of the inherent power of the court to compel the furnishing of evidence in a civil action by one adverse party upon the proper application of the other party. A party in a civil action has no privilege of refusing to testify or furnish information necessary to the presentation of his opponent's case. The taking of depositions of adverse parties, orders for the inspection of books and papers in the possession of the other party, and the issuing of *subpoenas duces tecum* are well-recognized examples of this power. And although it has perhaps never been definitely decided whether or not bills of discovery are available to litigants in this state, there is no question that analogous methods are employed to secure, under the compulsion of the court, evidence from adverse parties deemed necessary by the other party to establish the true facts of any controversy. Such an order necessarily depends in a large measure upon the discretion of the trial court, to be exercised according to the necessities of the case, and it requires prompt execution to be of any avail. It is obvious that if the enforcement of such an interlocutory order must await the determination of an appeal therefrom, the trial of the main issue involving the question of trespass by the appellants and their misappropriation of the oil of the respondent must be indefinitely postponed, the respondent checkmated in securing redress, and the administration of justice by the court seriously hampered. This very fact clearly demonstrates that these orders are vital and essential to the correct determination

of the main issue and hence utterly dissimilar to the orders involved in the authorities cited by appellants. In no sense can the question involved in said orders be said to be a collateral matter distinct from the general subject of litigation. The case of *Montana Ore Purchasing Co. et al.* v. *Butte & Boston Consolidated Min. Co.*, 126 Fed. 168, definitely holds that an order of the character and nature of the instant orders is not a final judgment. In that case a writ of *supersedeas* was sought to stay the enforcement of an order for the survey of a certain mine. The United States Circuit Court, Ninth Circuit, held that such an order was not final in any sense and hence not appealable. The case of *United States et al.* v. *Circuit Court*, 126 Fed. 169, is to the same effect.

 Neither can it be said that said orders were injunctions. Appellants construe said orders as mandatory injunctions upon the theory that said orders required the appellants to deliver up the temporary possession of its property during the period of time involved in the making of the survey and that such an order thereby disturbed the *status quo* of the property involved. Authorities are cited which hold that certain injunctions, which by their form purport to be prohibitory injunctions, are in reality mandatory injunctions and their execution is stayed by perfected appeals. That the orders here in controversy are not mandatory injunctions has been heretofore decided in this court by a denial without written opinion of appellants' application for a writ of prohibition or *supersedeas* to prevent the enforcement of the identical orders here involved. The writ was sought upon the specific ground that the orders for examination and survey were mandatory injunctions and therefore automatically suspended by the perfecting of appeals. In denying the application for the writs, this court necessarily decided that appellants' claim was not well grounded.

 Neither can said orders be correctly construed as prohibitory injunctions. It is true that they order the appellants to refrain from interfering with the carrying out of the orders of examination and survey. But this prohibition is in reality surplusage since every order of a court by necessary implication proscribes any interference with its enforcement. Aside from this minor and subsidiary provision, the orders did not prohibit appellants from any affirmative action.

Since said orders are not final judgments, nor injunctions, either mandatory or prohibitory, there is no escape from the conclusion that said orders are not appealable orders. By reason of the fact that we have deemed it desirable to discuss in detail the question of whether or not such orders are appealable and have definitely determined that they are not appealable orders, the issue as to whether or not the questions involved therein have become moot, by virtue of the fact that the second order has in fact been carried out, becomes immaterial, and any questions upon the merits of these orders are outside the scope of this discussion.

The appeals from said orders are hereby dismissed.

Thompson, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.