[Civ. No. 10511. First Appellate District, Division Two.—May 7, 1937.]

HENRY NOTTEN et al., Appellants, v. MARQUES B. MENSING et al., Respondents.

Edgar W. Howell, Sheridan, Orr, Drapeau & Bates and Ivan L. Smith for Appellants.

Don G. Bowker and James C. Hollingsworth for Respondents.

STURTEVANT, J.—After this action was commenced the defendants appeared and demurred to the plaintiffs' complaint. The demurrer was sustained without leave to amend. From the judgment based on that order the plaintiffs appealed and the decision on appeal was filed April 30, 1935. (*Notten* v. *Mensing*, 3 Cal. (2d) 469 [45 Pac. (2d) 198].) After the *remittitur* was sent down the defendants answered. They denied all of the material allegations contained in the complaint of the plaintiffs. Thereafter a trial was had and later the trial court made findings in favor of the defendants. From the judgment entered on those findings the plaintiffs again appealed.

The plaintiffs contend that the findings are not supported by the evidence. In that connection they argue that certain witnesses gave testimony that was not contradicted by other witnesses, that it was testimony that was not inherently improbable and therefore the trial court should have adopted it, but, on the other hand, it rejected it. In so contending we think the plaintiffs fail to appreciate the reasoning of the trial court.

On the 30th day of September, 1921, John W. Notten and Carrie M. Notten were and had been for a number of years man and wife. On the date last mentioned they made their wills. The nature of those documents is sufficiently set forth in *Notten* v. *Mensing, supra,* with this exception. Both documents are strictly wills in form. Neither document purports to contain any language showing a collateral agreement between the spouses, that is, neither purports to be a contract not to revoke, as was the will involved in *Warwick* v. *Zimmerman,* 126 Kan. 619 [270 Pac. 612].

On February 13, 1929, Carrie M. Notten made another will purporting to revoke her former will. On October 16, 1933, she died and the will last mentioned was admitted to probate. In drawing their complaint the plaintiffs drew it on the theory that the wills dated September 30, 1921, were executed pursuant to an oral agreement that they were to be irrevocable

and that neither the testator nor the testatrix would at any time revoke his or her will. Appreciating that an oral agreement of that kind is invalid and unenforceable (subd. 6, sec. 1624, Civ. Code), the plaintiffs also set forth facts purporting to allege an estoppel of the defendants to rely on the statute of frauds. On the former appeal (*Notten* v. *Mensing, supra*) the Supreme Court held that their pleading was sufficient.

In presenting their case on its merits the plaintiffs called several witnesses and elicited testimony showing declarations made by John W. Notten and by Carrie M. Notten in which it was said, ''we agree'', or words to that effect. No single witness testified as to what the spouses agreed upon. No single witness, except Mr. Orr, even mentioned the word ''revoke''. Mr. Orr testified, ''I told them that they understood of course that wills could be revoked, and they said yes, and Mrs. Notten said, 'I guess we can trust each other after all these years'; and John Notten smiled, and they looked at each other and said, 'Yes, I think we can.' '' Those statements made to Mr. Orr do not show a promise not to revoke, but they imply that if either party did revoke, nevertheless, he or she would act fairly. There is nothing in the record showing that the last will written by Mrs. Notten was not fair in every respect. Be that as it may, the testimony of Mr. Orr certainly does not bring this case within the rule ''To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, . . . '' (*Rolls* v. *Allen,* 204 Cal. 604, 608 [269 Pac. 450].)

Mrs. McBroom testified that on one occasion when she was in the home of the Nottens, Carrie M. Notten said in the presence of Mr. Notten, ''that she and Uncle John had agreed to will the properties one to the other and for the use of the survivor during the life. And that the survivor was to make ·a will at his or her death and will the property *equally* between the families of both Uncle John and Aunt Carrie''. Other witnesses testified using the same word *''equally''*. The record discloses that on September 30, 1921, John W. Notten had surviving eleven nephews and nieces, children of deceased brothers and sisters. He also had living one sister and one brother. It also discloses that Mrs. Notten had living three nephews and nieces, children of a deceased brother, also three sisters and one brother, each of whom had children but who were not to inherit except as representatives of their

parents. When speaking of dividing the property equally between the families of both spouses, no single witness testified to any facts showing how the property was to be apportioned among those numerous heirs. Not a single fact was developed showing Mr. Notten did or did not desire his brothers and sisters to be treated *equally*, or his nephews and nieces to be treated *equally*. The same remark applies to the kith and kin of Mrs. Notten. We note that the plaintiffs claim the two wills as executed show the property was to be divided *equally* between the two families. We think that claim is not sustained by anything contained in the record. It is based on an assumption that the entire estate when the wills were made was $4,000. There was no evidence to that effect. The value of the residue of the joint estate, or the value of the entire estate in 1921 does not appear. There is not a word to indicate that the testator was dividing his property into two equal parts and then subdividing one of those equal parts among the heirs on one side and the other part among the heirs on the other side of the house. It is therefore clear that the evidence does not show Mr. and Mrs. Notten entered into any irrevocable agreement or that they entered into any agreement to the effect neither would later revoke his or her will. If, as some witnesses claimed, there was a purported agreement that they would each make a will equally dividing their properties, it is sufficient to say that, as shown above, neither party ever performed. In deciding the case the trial judge prepared a written memorandum of decision. We will not extend the length of this opinion by quoting therefrom, but it is perfectly clear he was attempting to explain to the parties and set forth the foregoing propositions. Furthermore, the trial court found the facts to be as recited above.

█ It will be conceded that the two wills are mutual and reciprocal; but neither refers to the other nor to any collateral agreement, oral or in writing. He who contends there was such an agreement has the burden of proving it and the scope thereof. (69 C. J. 1303, Wills, sec. 2729.) █ The two wills, standing alone, do not prove the existence of any collateral agreement. (*Rolls* v. *Allen*, 204 Cal. 604 [269 Pac. 450]; *Beveridge* v. *Bailey*, 53 S. D. 98 [220 N. W. 462, 60 A. L. R. 619].) The two wills, taken together with all the oral testimony, do not show an irrevocable contract nor the terms

thereof. The facts in the case before us, to say the least, are no stronger than were the facts in *Beveridge* v. *Bailey, supra*; *In re Rhodes' Estate,* 277 Pa. 450 [121 Atl. 327]; *Edson* v. *Parsons,* 155 N. Y. 555 [50 N. E. 265]; *Wallace* v. *Wallace,* 216 N. Y. 28 [109 N. E. 872]; *Menke* v. *Duwe,* 117 Kan. 207 [230 Pac. 1065]; *Klussman* v. *Wessling,* 238 Del. 568 [87 N. E. 544]; *Wanger* v. *Marr,* 257 Mo. 482 [165 S. W. 1027]; *German* v. *Camburn,* 154 Mich. 260 [117 N. W. 641]. But in each of those cases the court held, as a matter of law, the evidence was insufficient to prove that the wills were made pursuant to a collateral agreement.

 Assuming for the purposes of this decision that there was a purported agreement between Mr. and Mrs. Notten, the question arises was the agreement in the instant case one a court of equity will enforce? In *Edson* v. *Parsons, supra,* the Supreme Court of New York enumerated the rules governing the court. It then said: ''These rules require the contract to be certain and definite in all its parts; that it be mutual, and founded upon an adequate consideration; and that it be established by the clearest and most convincing evidence.'' In this state those rules are statutory. (Civ. Code, secs. 3384–3391.) In *Klussman* v. *Wessling, supra,* the Supreme Court of Illinois stated the same rule. It there set forth the facts in that case which showed that the surviving spouse would have taken under the law approximately what she would have taken under the will. The court quoted from *Lord Walpole* v. *Lord Orford,* 3 Ves. Jr. 402. It then added: ''We should hesitate, on the evidence in this record, to hold that the consideration received by Louise Grimsell under the will of her first husband was sufficient to require the enforcement of the alleged contract as to her will of that date.'' But the proportionate values of the properties of the respective parties in that case differed only as to a comparatively small sum. Whereas, in this case they differed in the proportion of a thousand to one, or thereabouts. In *Haddock* v. *Knapp,* 171 Cal. 59 [151 Pac. 1140], the court affirmed the judgment of the trial court in which it refused to compel the performance of a contract to exchange where the values stood as $2,800 to $1400 because the consideration was not adequate. For this additional reason we think the trial court in the instant case did not err in denying a decree in favor of the plaintiffs.

■ We pass now to the estoppel theory. It becomes necessary to state some additional facts as disclosed by the record. In the early nineties John W. Notten and Carrie M. Notten started to farm a tract in the Avenue section of Ventura County. They entered into a contract to purchase fourteen acres from A. D. Barnard. They gave back to the vendor a purchase-money mortgage. Mrs. Notten's brother, Herman R. Mensing, made financial contributions. The purchasers were unable to carry out their contract and a settlement was made under the terms of which five acres were retained and a deed was executed to Carrie M. Notten. Later she filed a homestead on that five acres. They conducted the farm and Mrs. Notten kept boarders. One of the boarders died leaving her a legacy of over $3,000 in cash. With that money she paid off some of the debts owing by her husband and herself and with the balance she purchased what is known as the Meta Street property on which she was residing at the time of her death. That property was taken in joint tenancy by John W. Notten and his wife Carrie M. Notten. In 1917 Carrie M. Notten executed an oil-well lease in which John W. Notten joined. The lease covered a tract including the five acres standing in the name of Carrie M. Notten. Other than household furniture, it does not appear that either spouse possessed any other properties when the wills were made. When John W. Notten died his wife presented his will for probate, it was admitted and duly probated. It transpired that he left an estate of $817.50. After expenses of the probate proceeding were paid, $634.87 was paid to the surviving widow. What she did with that money the record does not disclose.

Under the oil-well lease above mentioned substantial rentals were coming in at about the time the wills were made or a little later. After the death of John W. Notten the rentals increased and the court found that "the reasonable value of the whole estate of Carrie M. Notten deceased, at the time of her death was the sum of $757,962.33". Looking back over all of the foregoing facts we see nothing that would have justified the trial court in finding that an estoppel had arisen in favor of the plaintiffs. In short, we think it clearly appears that under the facts shown by the record before us Carrie M. Notten never entered into a contract, orally or in writing, agreeing not to revoke her will. That being so, she

had the statutory right to revoke. (Civ. Code, sec. 1279.) Under such circumstances no fraud could be charged and no basis for an estoppel was created.

As we understand them, the defendants contend that even though the spouses entered into an agreement not to revoke, the fact Mrs. Notten accepted $634.87 under the will of her husband would not give rise to an estoppel against them. (*Rolls* v. *Allen*, 204 Cal. 604 [269 Pac. 450].) They call to our attention that she could have asked for a family allowance and there would have been nothing left in the estate of John W. Notten. They also claim the said sum was not such a substantial sum as would have warranted the chancellor in finding that the defendants were estopped when nearly $800,000 was involved. As we have held the finding of the trial court that the Nottens never entered into a contract not to revoke was sustained by the evidence, it is unnecessary for us to pass on the contention last made.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 2, 1937.