[Civ. No. 16045. Second Dist., Div. Three. May 11, 1948.]

PAULINE LYNCH, Appellant, v. FREDERICK W. LICHTENTHALER et al., Respondents.

438

Cosgrove, Clayton, Cramer & Diether for Appellant.

Harvey W. Guthrie for Respondents.

WOOD, J.—Plaintiff, in this action against the beneficiaries and the executor under the will of her stepfather Herman Golles, seeks, by her first cause of action, to establish a trust as to one-half of the distributable estate, and, by her second cause of action, to quiet title to an undivided one-half of said distributable estate. Judgment was for defendants, and plaintiff appeals from the judgment.

The alleged basis of the action is that plaintiff's mother, Annie Golles, and plaintiff's stepfather, Herman Golles, had entered into a purported oral agreement to make reciprocal wills and not to revoke such wills. On November 15, 1934, Annie Golles made a will, and on November 16, 1934, Herman Golles made a will. The wills were practically identical. Under the wills each testator appointed the other testator as executor, and in the event such appointee did not survive the testator, appointed plaintiff as executrix. Also under the wills, each testator gave all of his property to the surviving spouse for the period of his life, with the right to consume and use the principal, and each testator gave, upon the death of the survivor, one-half the remainder to plaintiff herein and one-half to the children of plaintiff's brother, the defendant Frederick W. Lichtenthaler (who will be referred to herein as Frederick). Differences in the wills were as follows: Mrs. Golles stated that she had two children, and Mr. Golles stated that he had no children; she referred to her "heirs hereinafter named" and to "my daughter" and "my son"; he referred to his "legatees and devisees hereinafter named" and to "the daughter of my wife" and "the son of my wife"; she stated that she made no provision for her son Frederick, and he stated that he made no provision for his blood relatives and stated reasons why his property "should go" to his wife and to his wife's daughter and grandchildren. The plaintiff and Frederick were the only children of Mrs. Golles, and they were the issue of a previous marriage. Mr. Golles had no children. Mrs. Golles died July 19, 1943. Her will was admitted to probate and the estate was distributed according to the terms of the will. On November 5, 1943, Mr. Golles revoked his will and made another will in which he gave all of the property, except that in which he held a life estate under his wife's will, to Frederick, Frederick's wife, and Frederick's three children, and he stated therein that he was leaving nothing to plaintiff for the reason that she had forced him, by threats on his life, to give her $1,500 "right after" the death of Mrs. Golles, receipt for which money was in his safe deposit box. Mr. Golles died on July 26, 1945, and the will last mentioned was admitted to probate. Frederick, as guardian of his minor children, filed a petition to terminate the life estate of Mr. Golles in the property which had been distributed to Mr. Golles for life under the will of Mrs. Golles. The court decreed, in the matter of that petition, that the life

estate had terminated, and that plaintiff is the owner of an undivided one-half interest in the property which was the subject of the life estate, and that Frederick's children are the owners of the other undivided one-half interest therein.

The principal issue before the trial court was whether Mr. and Mrs. Golles had entered into an oral agreement to make reciprocal wills and not to revoke them. The trial court found that it was not true that they had agreed to execute mutual or reciprocal wills, and that it was not true that they further agreed that said wills should not be revoked. Appellant contends that there was substantial evidence that such an agreement had been made.

Plaintiff and her husband testified that, after the death of Mrs. Golles, plaintiff's husband, at the request of Mr. Golles and in his presence, read the will of Mr. Golles. Plaintiff testified that Mr. Golles then stated that "You know, it is just like mother's will. We drew these wills up" and they are duplicate wills and "I want to know what you think of it." She also testified that "that is the way it is that everything was fixed up, and he was most satisfied." Plaintiff's husband testified that after he had read the will Mr. Golles asked him if he did not think it was a fair will, and stated that he and his wife "wanted to do the right thing"; that Mr. Golles stated that he and his wife had made "two wills," and had she survived him "it would have been the same way— that that was the way they had arranged things."

A sister of Mrs. Golles, called as a witness on behalf of plaintiff, testified that during the married life of Mr. and Mrs. Golles she "was very intimate with them"; that she heard Mrs. Golles speak to Mr. Golles many times about making wills; that after they had made the wills it was "brought out" in the presence of the witness many times "that they were so well satisfied with these mutual or reciprocal wills they had made"; that upon one occasion when Mrs. Golles was ill she told the witness that "when she left, everything was going to be fine — that Pauline [plaintiff] would be taken care of, and that the boys [Frederick's sons] would" be taken care of; and that she said "we can't leave the money to Fred because he would not know how to take care of it"; and that Mr. Golles was present at that time, and he replied "Yes, I would rather throw it in the ocean because I know what would become of it."

A physician called on behalf of plaintiff testified that he had known both Mr. and Mrs. Golles; that he had had social, as

well as professional, visits with them; that they had said in his presence that Frederick had sued them, and that he had all he was going to have "out of their finances."

The foregoing testimony is the substance of the testimony received by the trial court pertaining to the issue of an oral agreement. Plaintiff testified, regarding the sum of $1,500 referred to in Mr. Golles' will as having been received by her, that Mr. Golles told her he had taken the money from a safe deposit box the day Mrs. Golles died and that he wanted to give it to plaintiff. The receipt for said sum, which was in plaintiff's handwriting and signed by her, recited that the said sum was to repay $800 which plaintiff had "given" her parents in 1934, and that "the remainder is in consideration to me for former gifts of money given" to Frederick. There was evidence that Mr. Golles had the $1,500 in cash in his home, and there was also evidence that he went to the bank to get part of it. It is not necessary, however, to determine the circumstances under which plaintiff received the money, since that evidence is not material upon the question whether there was an oral agreement between Mr. and Mrs. Golles to make reciprocal wills and not to revoke them. Evidence was also introduced to show that Mr. and Mrs. Golles had not been friendly toward Frederick, principally because he had commenced an action against them for an accounting in a guardianship matter which related to property he had inherited from his father. While that evidence would tend to explain the action of Mr. and Mrs. Golles in designating persons other than Frederick to take under their wills, it is immaterial upon the question whether there was an agreement between them to make reciprocal and irrevocable wills.

The burden was upon the plaintiff to show the oral agreement by clear and convincing evidence. (See, *Rolls* v. *Allen,* 204 Cal. 604, 608 [269 P. 450].) There was no evidence that the testators expressly or impliedly agreed not to revoke the wills. Although each testator made the same testamentary disposition of his property, there was no provision in either will, by direct reference or by implication, indicating the existence of an agreement to renounce the right to revoke those wills. It is provided in section 23 of the Probate Code that a conjoint or mutual will may be revoked by any of the testators in like manner as any other will. In *Rolls* v. *Allen, supra,* it was said, at page 608, that a person who executes a mutual will with another does so with notice given by the statute

itself that such will is subject to revocation, and "The mere concurrent execution of mutual wills with full knowledge of their contents by both testators is not enough, therefore, as claimed, to prove a legal obligation to forbear revocation in the absence of a valid contract." It was stated in the case of *Notten* v. *Mensing*, 3 Cal.2d 469, at page 477 [45 P.2d 198], "The mere fact that the wills are reciprocal or contain similar or identical provisions, or that they were executed at the same time and before the same witnesses, is not of itself sufficient evidence of the alleged oral agreement." The fact that the provisions of the alleged reciprocal wills herein were practically identical, and that they were executed about the same time, and were not revoked during the lifetime of Mrs. Golles, is not of itself evidence of such alleged oral agreement. Even if there had been clear and positive evidence that the testators had agreed to make reciprocal wills, it would have been necessary, in order for appellant to prevail, to show further that the wills had been made pursuant to an agreement not to revoke. (*Notten* v. *Mensing*, 20 Cal.App.2d 694, 697-698 [67 P.2d 734].) ■ Such an agreement must be certain and definite, founded upon an adequate consideration, and established by the clearest and most convincing evidence. (*Ibid.*)

■ Appellant also contends that the trial court erred in sustaining objections to, and striking out, certain testimony given by another witness who was called on behalf of plaintiff. The substance of that testimony was that Mrs. Golles had told the witness several times that she (Mrs. Golles) and her husband had agreed to make reciprocal wills so that Pauline (plaintiff) would get one-half of their property, and Frederick's three children would get one-half, and Frederick would "not get one cent." Appellant asserts that that testimony was admissible, as an exception to the hearsay rule, to show the intent of the declarer, Mrs. Golles. The rulings were correct. It is not claimed that such alleged statement by Mrs. Golles was made in the presence of Mr. Golles or that he had knowledge that she had made such statement. Testimony as to what the witness heard Mrs. Golles say, out of the presence of Mr. Golles, would not have been binding upon Mr. Golles, and it is not binding upon his representative. In the case of *Fuller* v. *Nelle*, 12 Cal.App.2d 576 [55 P.2d 1248], which involved alleged mutual and irrevocable wills, testimony of a third person, as to what the first decedent said relative to carrying out the mutual wills of the testators, was received. That case is distinguishable from the present case in that the

statement therein was made in the presence of the second decedent.

Appellant alleged in the complaint that defendants are estopped from asserting the statute of frauds against the enforcement of the alleged oral agreement. The alleged agreement, not being in writing, would have been unenforceable (Civ. Code, § 1624, subd. 6), unless the defendants were estopped to plead the statute of frauds. It is true, as stated by appellant, that the trial court made no finding on the issue of estoppel. In view of the finding of the trial court, however, that there was no oral agreement, which finding was supported by the evidence, the issue regarding estoppel is immaterial and it was not necessary to make a finding on that issue.

The judgment is affirmed.

Shinn, Acting P. J., and Vallée, J. pro tem., concurred.