[L. A. No. 21008. In Bank. Dec. 28, 1949.]

MAURICE C. BROWN, Petitioner, v. THE SUPERIOR
COURT OF LOS ANGELES COUNTY, Respondent.

Edmond Gattone for Petitioner.

George I. Devor, Irving M. Walker and Mark Mullin for Respondent.

GIBSON, C. J.—Petitioner secured an order from the Superior Court of Los Angeles County for the examination of Abigail Simpson, E. Ross Simpson and William Crandall in a proceeding to perpetuate testimony pursuant to sections 2083-2089 of the Code of Civil Procedure. The witnesses refused to answer certain questions, and the court denied petitioner's request for an order directing them to answer on the ground that petitioner had failed to show that he had a cause of action. This proceeding in mandate was then brought to compel the court to order the witnesses to testify.

Insofar as the propriety of the use of the writ for this purpose is concerned, it is well settled that there is a clear duty on the trial court to enforce the statutory right to a deposition and compel a witness to testify. (*McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386, 392-394 [159 P.2d 944]; *Demaree* v. *Superior Court*, 10 Cal.2d 99 [73 P.2d 605]; *Christ* v. *Superior Court*, 211 Cal. 593 [296 P. 612]; *San Francisco Gas & Electric Co.* v. *Superior Court*, 155 Cal. 30 [99 P. 359, 17 Ann.Cas. 933].) In some cases a writ has been used to test the right to take a deposition without discussion of the adequacy of another remedy (*Hays* v. *Superior Court*, 16 Cal.2d 260 [105 P.2d 975]; *Demaree* v. *Superior Court*, 10 Cal.2d 99 [73 P.2d 605]); and in *McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386 [159 P.2d 944], it was impliedly held that the order was not immediately appealable, and the remedy of appeal from a final judgment was held inadequate. (See, also, *Union Oil*

*Co.* v. *Reconstruction Oil Co.*, 4 Cal.2d 541, 545 [51 P.2d 81] ; *Collins* v. *Corse*, 8 Cal.2d 123, 124 [64 P.2d 137].) In other cases it was assumed for the purposes of the decision that the order was immediately appealable, but the remedy if available was deemed inadequate (*Christ* v. *Superior Court,* 211 Cal. 593 [296 P. 612] ; *San Francisco Gas & Electric Co.* v. *Superior Court,* 155 Cal. 30, 39 [99 P. 359, 17 Ann.Cas. 933] ), and in still others the court used certiorari to review an order directing the taking of a deposition, thereby in effect holding that the order was not appealable (*Kutner-Goldstein Co.* v. *Superior Court,* 212 Cal. 341 [298 P. 1001] ; *Pollak* v. *Superior Court,* 197 Cal. 389 [240 P. 1006] ; *Gailleaud* v. *Superior Court,* 108 Cal.App. 752 [292 P. 145] ; *Irving* v. *Superior Court,* 79 Cal.App. 361 [249 P. 236] ).

Three situations are presented by the above cases : (1) where a party seeks to perpetuate testimony under section 2083 et seq., of the Code of Civil Procedure prior to the bringing of an action ; (2) where the deposition is sought under section 2021 after commencement of the action and pending trial ; and (3) where the deposition is sought under section 2021 pending appeal and retrial upon a possible reversal of the judgment. We see no good reason for differentiating between these three situations insofar as appealability is concerned, or for departing from the cases which hold that the order is not appealable. Although such orders are, of course, reviewable by appeal from the final judgment, a party should not be required to proceed to trial without the benefits afforded by a deposition to which he is entitled, and it is well settled that under such circumstances the burden, expense and delay involved in a trial render an appeal from an eventual judgment an inadequate remedy.

In his application for the order of examination petitioner alleged that he expects to be a party to an action against Abigail and her present husband, E. Ross Simpson, to determine his rights under a written contract to make mutual wills, entered into by Abigail and her deceased former husband, George Brown. By the terms of the contract George and Abigail agreed that they would execute mutual wills, each devising his or her entire estate to the other, and that "the survivor shall bequeath and devise the entire combined estates," one-half to designated kindred of George, of whom petitioner is one, and one-half to designated kindred of Abigail. Mutual wills were executed pursuant to the contract. Thereafter, George died, his will was probated, and his entire

estate distributed to his widow. It was further alleged that she later married E. Ross Simpson and transferred substantially all her property, including that received from her former husband, to Simpson without consideration and with the intent to evade her obligations under the contract and to defraud its beneficiaries, namely, the kindred of George and herself.

The will of George Brown stated that it was made in consideration of a mutual will by Abigail and ''in pursuance to an agreement between myself and my said wife . . . for the making of these mutual wills on the part ·of each of us.'' It then provided that his property should go to Abigail, if she should survive him, otherwise his entire estate, including any and all property or estate received from Abigail, should go one-half to his kindred and one-half to her kindred.

There is no express statutory requirement that the applicant for an order to perpetuate testimony must show that he has an actual or potential cause of action, and it is not entirely clear from the cases whether such a showing is essential. (See *Demaree* v. *Superior Court,* 10 Cal.2d 99, 103-104 [73 P.2d 605]; *Kutner-Goldstein Co.* v. *Superior Court,* 212 Cal. 341, 345 [298 P. 1001]; *Jonas* v. *Superior Court,* 138 Cal.App. 677, 678-679 [32 P.2d 1114]; *Cailleaud* v. *Superior Court,* 108 Cal.App. 752, 754 [292 P. 145].) However, we need not determine whether there is such a requirement because we are of the opinion that, as contended by petitioner, he has stated facts which, if true, would entitle him to some kind of relief.

 In his application for the order of examination petitioner asserted that his contemplated action was one to determine his rights under the contract and that he expected to seek legal and equitable relief for the purpose of protecting those rights. It seems clear that he would at least be entitled to bring an action to obtain a declaration of his rights under the alleged agreement. (Code Civ. Proc., § 1060.) He may also be entitled to other relief. It is well settled that a person may contract to make a particular disposition of his property by will, and in case of a breach the promisee has several available remedies. He may bring an action at law for damages. (See *O'Brien* v. *O'Brien,* 197 Cal. 577, 588-589 [241 P. 861]; *Roy* v. *Pos,* 183 Cal. 359, 366-367 [191 P. 542]; *Morrison* v. *Land,* 169 Cal. 580, 590 [147 P. 259]; 4 Page on Wills [Lifetime ed.] §§ 1733, 1744.) Equitable relief in the

form of "quasi specific performance" of the contract may be obtained where the remedy at law is inadequate and the promisor has failed to make the promised disposition of his will. (*Jones* v. *Clark*, 19 Cal.2d 156 [119 P.2d 731]; *Bank of California* v. *Superior Court*, 16 Cal.2d 516, 524 [106 P.2d 879]; *Wolf* v. *Donahue*, 206 Cal. 213 [273 P. 547].) It has also been recognized that the promisees of such a contract need not wait until the death of the promisor but may seek equitable relief against *inter vivos* conveyances made by him in fraud of their rights. (*Osborn* v. *Hoyt*, 181 Cal. 336 [184 P. 854]; *Rogers* v. *Schlotterback*, 167 Cal. 35, 48 [138 P. 728]; see note, 108 A.L.R. 867; 4 Page on Wills [Lifetime ed.] §§ 1727, 1729, 1744.)

The right to enforce such a contract to make a particular disposition of property on death is not restricted to the promisee. Where two parties agree to make mutual wills, each promising to dispose of his property to the other or, if the other be dead, to certain third persons, and one of the parties performs by leaving his property to the other, the intended devisees and legatees are entitled to enforce their rights as beneficiaries under the agreement. The contracting party who survives becomes estopped from making any other or different disposition of the property, and his obligations under the agreement become absolutely irrevocable and enforceable against him, at least where he avails himself of the provisions of decedent's will in his favor and accepts substantial benefits thereunder. (*Notten* v. *Mensing*, 3 Cal.2d 469, 473 [45 P.2d 198]; *Sonnicksen* v. *Sonnicksen*, 45 Cal. App.2d 46, 52-55 [113 P.2d 495]; see *Rolls* v. *Allen*, 204 Cal. 604, 609 [269 P. 450].)

It is argued by respondent that petitioner has not shown an actual or potential cause of action because he has not alleged that the contract between George and Abigail contained an express agreement not to revoke the mutual wills. It is not necessary, however, that there be an express agreement to this effect in order to enforce a contractual obligation to leave property to designated persons at death. In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. (*Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 771 [128 P.2d 665]; *Nelson* v. *Abraham*, 29 Cal.2d 745, 750-751 [177 P.2d 931].) Where the parties contract to make a particular disposition of property

by will, the agreement necessarily includes a promise not to breach the contract by revoking the will and failing to dispose of the property as agreed. ▮ The rights of the parties depend upon the contract, and the revocation of the will or other breach of the contract does not prevent the intended devisee or legatee from enforcing the contractual obligations. (See *Estate of Rolls,* 193 Cal. 594, 601-602 [226 P. 608] ; *Jones* v. *Clark,* 19 Cal.2d 156 [119 P.2d 731] ; *Bank of California* v. *Superior Court,* 16 Cal.2d 516, 524 [106 P.2d 879] ; *Wolf* v. *Donahue,* 206 Cal. 213 [273 P. 547].) As pointed out in *Estate of Rolls,* 193 Cal. 594, 601-602 [226 P. 608], while a will is revocable under section 23 of the Probate Code and the parties contract with knowledge of this fact, the obligation to make the agreed disposition may still be enforced.

▮ There is a statement in *Lynch* v. *Lichtenthaler,* 85 Cal.App.2d 437 [193 P.2d 77], which is not in harmony with the foregoing principles. That case involved reciprocal wills but the trial court found that they were not made pursuant to any agreement. The District Court of Appeal in affirming the judgment stated at page 442 : ''Even if there had been clear and positive evidence that the testators had agreed to make reciprocal wills, it would have been necessary, in order for appellant to prevail, to show further that the will had been made pursuant to an agreement not to revoke.'' The case of *Notten* v. *Mensing,* 20 Cal.App.2d 694, 697-698 [67 P.2d 734], which is cited as authority for the quoted language, does not support it. The statement is clearly erroneous and must be disapproved.

▮ In the present case. if, as claimed, Abigail acquired George's property pursuant to an agreement to devise it to his relatives, she was under a duty to perform her agreement, and a breach of that duty would entitle petitioner to relief.

▮ There is no merit in respondent's contention that the probate decree in the estate of George Brown distributing the property to Abigail free from any restrictions is conclusive of petitioner's rights. It is well settled that jurisdiction over contracts to make a particular disposition of property by will rests in equity and not in probate. (*Estate of Rolls,* 193 Cal. 594, 599 [226 P. 608] ; see *Bank of California* v. *Superior Court,* 16 Cal.2d 516, 524 [106 P.2d 879].)

▮ While the trial court erred in finding that the witnesses need not complete their depositions because petitioner had not shown a cause of action, it appears that some of the questions asked may have been objectionable on the ground

that the answers would constitute a violation of the privilege of confidential communications and relationships. The trial court, however, did not pass upon any questions of privilege, and they cannot be determined at this time. The record is not clear as to what claims were made by all the witnesses in this regard, no facts appear from which it can be ascertained whether any claims of privilege were warranted, and the question has not been briefed in this court. Inquiry into the matter should not be foreclosed since, in a proceeding to perpetuate testimony, as in other deposition proceedings, any question asked is subject to objection on legal grounds, and a witness need not answer until the court rules that the question is proper and should be answered. (Code Civ. Proc., § 1991.) ▇▇ It follows that petitioner is not entitled to an order compelling the witnesses to answer all questions propounded but is entitled to a writ of mandate directing the trial court to set aside its order preventing the completion of the depositions and to make the necessary orders to effectuate those proceedings after passing upon any objections the witnesses may make to particular questions. Let the writ issue accordingly.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion and agree generally with the reasoning upon which it is based. I think it proper, however, to point out that the basic legal concept in the majority opinion is out of harmony with both *McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386 [159 P.2d 944], and *Hays* v. *Superior Court*, 16 Cal.2d 260 [105 P.2d 975], as neither of those cases squarely holds that there is a clear duty on the trial court to enforce the statutory right to a deposition and compel a witness to testify, and the Hays case particularly, which is cited with approval in the McClatchy case, holds directly to the contrary. I wrote a dissenting opinion in the Hays case and a concurring opinion in the McClatchy case in which I endeavored to expound the rule which the majority opinion in the case at bar appears to adhere to. In my concurring opinion in the McClatchy case, I stated at page 399: "The specific problem presented is whether a party to an action may, as a matter of right, require a witness to answer questions on the taking of his deposition relevant only to issues which

have been eliminated from the case by dismissal of the cause of action or defense which raised such issues. This problem has been the subject of considerable controversy among trial judges and lawyers. The decisions of this court and of the District Courts of Appeal on the subject are in hopeless conflict, and it is little wonder that trial judges should have difficulty in determining the proper course to pursue when problems of this character are presented to them. One line of cases headed by *San Francisco Gas & Electric Co.* v. *Superior Court,* 155 Cal. 30 [99 P. 359, 17 Ann.Cas. 933], answers this question in the affirmative. Another line of cases headed by the case of *Hays* v. *Superior Court,* 16 Cal.2d 260 [105 P.2d 975], answers it in the negative. The majority opinion answers it in both the affirmative and negative, as it cites the Hays case with approval and then attempts to distinguish it from the case at bar."

If the majority of this court have now decided to adhere to the rule announced in the line of cases headed by *San Francisco Gas & Electric Co.* v. *Superior Court, supra,* as the majority opinion in the case at bar appears to indicate, then the Hays case should be overruled and we would thereby eliminate the confusion which has arisen since the decision of that case. While it is apparent that the majority have now departed from the rule in the Hays case and have in effect overruled it *sub silentio,* I think the administration of justice in this state would take a step forward if the majority saw fit to expressly overrule that case and announce that the rule of *San Francisco Gas & Electric Co.* v. *Superior Court, supra,* would be the rule by which lawyers and trial judges would be governed in the future.