## The Texas Company, Appellant, v. Denzil M. Hollingsworth et al., Appellees.

608

Heard in this court at the
October term, 1939. Opinion
filed March 7, 1940. Rehearing denied April 15, 1940.

GREEN & PALMER, of Urbana, and WALTER E. WILL, of Mattoon, for appellant; HENRY I. GREEN, ORIS BARTH and ENOS L. PHILLIPS, all of Urbana, of counsel.

WHAM & WHAM, of Centralia, for appellee Denzil M. Hollingsworth et al.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Marion county dismissing the complaint in the case for want of equity. The appellant herein, the Texas Company, a corporation, will hereafter be referred to as plaintiff and the appellees will be referred to as defendants.

This controversy grows out of the following state of facts: The plaintiff holds leases for the drilling of oil and gas wells on a substantial amount of land which is described in the complaint. Between the holdings of the plaintiff the defendants hold lease on a small strip of land, being of the length of one-half mile, 33 feet in width at one end and 6 feet in width at the other, the average width of said strip being 19 feet. Just how this condition came about is not exposed in the pleadings, nor is it material. The fact remains. On this strip of land the defendants caused to be drilled 9 oil and gas wells. On either side of the strip, as offset wells the plaintiff has drilled 16 wells. The complaint in the case alleges that the wells of the

defendants on said strip of land are not bottomed under said strip, but on the contrary thereof extend beyond the border lines of said strip and into land which is leased by plaintiff; that thereby the wells of defendants are producing oil which is not under the strip of land owned by defendants, but from the land on either side owned by plaintiff. It is alleged that these wells were made by use of rotary drills and that by that means it is almost impossible to sink them to the horizons which are producing in that locality, straight down, but that they will vary, as they are lowered, in different degrees. The complaint alleges that because of these facts irreparable injury is being wrought against plaintiff and that it has no remedy except in a court of equity, and prays that the defendants may be enjoined from carrying forward that which plaintiff says in its complaint is to its irreparable injury. These facts, of course, are stated upon information and belief.

With its complaint the plaintiff filed its petition for a subsurface directional survey of the nine oil and gas wells owned by defendants, and showed to the court thereby that it is the only means of finding out the truth about the situation and that it is an adequate and scientific system whereby the truth of the allegations in the petition contained may be ascertained.

Shortly after the filing of the complaint and petition, notice was given to defendants to said complaint and hearing had on said petition. Service had not then been had upon the defendants in the case. Much of the substance of the complaint was set out in the petition. The petition is supported by affidavit and states upon information and belief that the defendants are actually removing oil, gas and other hydrocarbon substances from sands under the surface of the lands leased to the plaintiff; that while the surface locations of the defendants' wells are located on the narrow strip, yet the defendants are bringing to the surface

oil and gas from the bottoms of these wells located under the surface of the lands under lease to the plaintiff.

In addition to the verification of said petition there was filed therewith three affidavits, one of Morris E. Shrader, one by William C. Kneale and one by William James. These affiants are men of large experience in matters covered by their affidavits. The affidavit of Mr. Shrader, omitting some minor parts, is as follows: "That as a result of my experience in connection with the oil industry and subsurface directional surveys of oil and gas wells in the immediate vicinity of the above described real estate, it is my opinion that no well drilled for oil and gas to a depth sufficient to reach the Benoist and McClosky horizons in said location can be drilled perfectly straight, and the bottom thereof be directly under the top of said hole; that from the surveys I have made I know, of my own knowledge, that oil and gas wells drilled with a rotary tool do wander; that from the subsurface directional surveys that I have made in the vicinity of the above described real estate, I have found that the wells so surveyed have deviated or wandered from the vertical to such an extent that the bottoms of said wells vary from two to ninety feet from a perpendicular line from the top of said well where the same enters the surface of the ground; . . . that it is practically impossible, barring accidents, for a person to drill a well on a strip of land ranging from six feet in width to twenty-five feet in width and keep the bottom of said well within said strip of land; that there have been drilled on the above described real estate nine oil and gas wells, either to the Benoist or McClosky horizons, and that it is my opinion that none of said wells are bottomed on the above described real estate, but that said wells are bottomed on adjoining real estate, in and to which the Texas Company are the owners of oil and gas mining freehold estates. I am of the opinion that a subsurface

directional survey can be made of said nine wells without damage to said wells, and that such subsurface directional survey would determine the position of the bottom of said wells, and the course and direction of said wells; that in connection with any surveying operations of said wells that they can be conducted in my opinion and judgment in a manner which will only temporarily suspend production in said wells, and in a manner which will not cause damage to said wells, and that if production is temporarily stopped in said wells for the purpose of making a subsurface directional survey thereof, and the wells are thereafter again placed on production, that the rate of production will not be affected.''

Mr. Kneale's affidavit is substantially as follows: ''That I have made subsurface directional surveys of approximately thirty oil and gas wells in the Lake Centralia Salem Oil Fields, and in the immediate vicinity of the following described real estate, (describing the strip from six feet to thirty-three feet wide); that as a result of said surveys and as a result of my general experience in the oil industry and knowledge of the drilling of wells with rotary tools, I know of my own knowledge, that oil and gas wells drilled with rotary tools do wander from the vertical; that from the subsurface directional surveys that The Texas Company have made in the vicinity of the above described real estate, I have found that the wells so surveyed have deviated or wandered from the vertical to such an extent that the bottoms of said wells vary from two to ninety feet from a perpendicular line from the top of said well where the same enters the surface of the ground.''

This affiant further stated the same facts as those in the Shrader affidavit, to the effect that it is practically impossible to drill a well on a strip of land as narrow as that in question here with rotary tools, and keep the bottom of the well within the strip. He further stated

that nine oil and gas wells have been actually drilled on this strip; that they have been drilled either to the Benoist or McClosky horizons and that they have been drilled with rotary tools. He gave it as his opinion that none of them was bottomed on the strip leased to the defendants, but that all were bottomed on adjoining real estate which had been leased to The Texas Company and to which it is the owner of the oil and gas mining freehold estates.

Mr. Kneale also confirmed the statement of Mr. Shrader that such a subsurface directional survey could be made of the nine wells without damage to them and that it would determine the position of the bottoms of said wells, and their course and direction; that such survey could be conducted so as only temporarily to suspend production in said wells and in such manner as to cause no damage thereto and that when placed on production, the rate of production would not be affected by such survey.

Mr. James' affidavit states substantially that he was an employee of the Eastman Oil Well Survey Co. with six years' experience in directional drilling and oil well surveying, covering surveys of oil wells in the States of California, Texas, Oklahoma, Louisiana and Illinois; that he personally had made subsurface directional surveys of more than 20 oil and gas wells in the immediate vicinity of the strip in question; that as a result of his experience in connection with the oil industry and such surveys of oil and gas wells in the immediate vicinity of the strip in question, it was his opinion that no oil or gas well could be drilled to a depth sufficient to reach the Benoist or McClosky horizons in that location perfectly straight, with the bottom thereof directly under the top of the hole; that wells so drilled with rotary tools do wander; that he had found they deviated or wandered from the vertical from 2 to 90 feet from a perpendicular line from the top of the hole; that his employer was in the business

of surveying oil and gas wells to determine the true location of the bottoms thereof; that it is practically impossible to drill in a straight vertical line so that the bottom of the well will be located immediately under the top where it enters the surface of the ground. This affiant gave it as his opinion that none of the defendants' wells is bottomed beneath the strip in question, but that all are in fact bottomed on the adjoining real estate leased to the Texas Company; that they were taking oil and gas from freehold estates belonging to the Texas Company as lessee. He also confirmed the statements of the other affiants that such surveys could be made without damage to the wells or their subsequent production.

The qualifications and experiences of the above affiants warrant serious consideration of the matters and things alleged in their affidavits.

The defendants appeared upon notice and having limited their appearances, for that purpose, moved to dismiss the petition for a subsurface directional survey. Many reasons were assigned why these motions should be allowed. Upon hearing the court allowed these motions and dismissed the petition, upon being advised by plaintiff that it had no evidence, except that which it hoped to obtain by means of the survey; the court dismissed the complaint for want of equity.

Counsel for defendants have offered a large number of so-called reasons why the decree of the lower court should be affirmed. They have argued but five of them. We shall deal with them in the order in which they are presented.

Their first contention is that there is no appealable order in this cause. Under this head counsel say that the decree dismissing the complaint was entered at the request and consent of plaintiff. This does not appear from the record. On the contrary thereof it does appear that the court sustained the motion to dismiss

and strike the petition for the subsurface directional survey, and plaintiff's counsel then stated to the court "that proof to sustain the averments of the complaint that the bottoms of the wells drilled by the defendants, starting at the surface on the strip above described, are not located below the surface of said strip, but are located under the surface of the premises under lease to the plaintiff, could only be furnished by the proof expected and hoped by the plaintiff to be obtained by the subsurface directional survey presented in said petition, and that the plaintiff had no further or other proof on said allegations of the complaint." The court then found that there was no proof to sustain the complaint and ordered, adjudged and decreed:

(a) "That the petition of the plaintiff herein for subsurface directional survey be and the same is hereby dismissed and stricken;

(b) "That the complaint herein be and the same is hereby dismissed for want of equity, at the costs of the plaintiff."

Counsel make the error of complaining that this is an appeal from the order denying the subsurface survey. That is not a proper deduction from the record as the above-quoted proceedings show. While it is true that the petition was denied it is also true that the court entered a final decree disposing of the case by dismissing the bill for want of evidence and taxing the costs to the plaintiff. This leaves counsel in the position of contending for the upholding of a decree which they argue the court had no jurisdiction to enter, unless their argument is interpreted as a contention that it is the order denying the subsurface survey which is being appealed from. That was obviously not a final order. But the decree dismissing the cause and taxing costs is a final order.

Our holding on this matter naturally dovetails into the second subject discussed by defendants, namely, that the appeal must be dismissed for want of jurisdic-

tion of necessary parties. Again hewing to the line that this is an appeal from an order dismissing the complaint for want of evidence, we cannot see how counsel for the defense can complain of the jurisdiction of the court to enter this order. In the first place it is their order and they now seek to have it upheld. In the second place, the court, upon the filing of a bill in chancery might look that over and conclude that there was no cause of action and dismiss it on its own motion without any of the defendants therein in court. In our opinion jurisdiction to enter an order in favor of a defendant,—an order which defendants are anxious to uphold, is not dependent upon the service of summons upon the defendant in whose favor that order is entered. The position of counsel would seem naturally to be under the circumstances, that they are praying the court to reverse this case and remand it so that they can be properly served with process and then come into court and have a trial in order to get the same thing, exactly, which they now have and wish to keep. We cannot see any merit in counsel's contention that this appeal should be dismissed on the ground above stated, or on the ground that one of the owners was not made party defendant to this lawsuit. If they were contending that the decree should be reversed, or if an order had been entered adverse to them or adverse to the owner who was not served, then they might be heard.

As regards the jurisdiction to hear the petition for subsurface survey without the joinder of issue we call attention to the discovery section of our Practice Act, which we believe to be analogous to the situation in hand. Section 259.17 of that act [ch. 110, Ill. Rev. Stat. 1939; Jones Ill. Stats. Ann. 105.17] provides as follows: "Any party may, without filing an affidavit by motion seasonably made, either before or after issue joined and irrespective of the right to employ interrogatories in a complaint in equity, or to file a com-

plaint for discovery, or to employ a subpoena duces tecum, apply for an order directing any other party to any cause or matter to file a sworn list of all the documents, including photographs, books, accounts, letters and other papers, which are, or which have been, in his possession or power, material to the merits of the matter in question in said cause. . . ." If, before issue joined a banker may be ordered to bring his books into court for the inspection of the other party, or all manner of information obtained in hundreds of cases which come before courts in virtue of this section, why may not the court without joinder of issue hear and determine where truth that is undisclosed lies when the only power of disclosure rests in the power of the court. We think the cases are analogous and that the court did not err in hearing the petition for the survey upon notice to the defendants.

Circumstances in this case as in many other cases might have warranted the court in issuing the injunction prayed for without notice. It is a practice that has long obtained.

We do not attach significance to what counsel describe as "what might have happened" if this case had gone to issue and to trial. In any event defendants could not have received more at the hands of the trial court than they did receive, and all the time it must be remembered that defendants not only did not suggest anything to the court which might have taken the place of the subsurface survey, but, on the contrary, argued all the time against it, and having succeeded in having it denied, now contend that the action of the court in denying it and in entering a decree accordingly should be affirmed. We do not find in the cases cited authority to justify this position.

It is next contended that our mining statute is not broad enough to vest a court of chancery with power to order a survey of the character in question. Much may be said on this subject. Much has been said. It

has been ably discussed. However, we do not regard a decision of that question as necessary for a proper decision of this case. This observation though should be made. Counsel say that if it should be held that our mining statute is broad enough for this purpose it would clearly be unconstitutional, as obnoxious to the fourth amendment to the Federal Constitution and to the corresponding section of the State Constitution. That statement does not seem to be warranted. In some of the States, notably Oregon and California, statutes have been enacted permitting just such things as are here sought. Those statutes have stood the test of the highest court in the land. The same sections of the Constitution apply in California and in Oregon as apply in Illinois, and since the highest court has considered these statutes and held them valid, it would follow that if Illinois had such a statute it would not be in contravention of those sections of the Constitution. If a statute does not contravene the Constitution then the action of a court of equity would not, in furnishing the remedy which the statute furnishes, contravene the Constitution; that is, if a court of equity otherwise had power to afford the remedy. As said in substance in *Montana Co. v. St. Louis Mining & Milling Co.*, 152 U. S. 160, if it was a violation of the constitutional rights of the defendants for a court of equity to order a survey of the character here sought then it would be beyond the power of the State to pass a valid statute authorizing such an order. Apparently the cases where this subject has been adjudicated, not only hold that such statutes do not contravene the Constitution, but are not invalid as being in deprivation of other property rights of citizens. *Union Oil Co. of California v. Reconstruction Oil Co.*, 4 Cal. (2d) 541, 51 Pac. (2d) 81.

We are now brought to the question as to whether a court of chancery has inherent power to order the directional subsurface survey prayed for in the peti-

tion. Here is a complaint which states, it is true on information and belief, that a trespass is being committed against petitioner, that an irreparable injury is being imposed upon it and that in substance defendants are by the means alleged in the complaint taking from plaintiff that which belongs to plaintiff and does not belong to defendant. It is shown to the court intelligently, and supported by the best evidence which can be obtained on the question, that the matters and things alleged in the complaint are true; that there is only one way of finding out the truth of whether a trespass is being committed, whether wrong is being done, and that is by means of the directional subsurface survey prayed for. In addition to this evidence the court was surrounded by the very strong circumstance that in all human probability the matters complained of were being committed. It is highly probable, we think, that the things complained of are true. Here is a strip of land that is six feet wide at one end. Is it possible to drill oil wells on this strip of land to the depths that they must necessarily go and to which the wells in question have gone, and have them bottom on the same six foot strip? A deviation of only three feet would put the bottom of the hole over on plaintiff's land. We are of the opinion that these circumstances alone should at once have arrested the attention of the court. Here are the facts and the circumstances. Here is the fact not only supported by strong evidence, but by facts and circumstances which argue that the only way to find out the truth about this situation is the making of the survey prayed for.

There is no wrong without a concurrent legal remedy. Must a court of equity sit by and say that it is powerless to do a thing,—the only possible thing which can ascertain the truth, and say that it has not the power to ascertain that truth? If a wrong is being committed, it is the duty of the court to right that wrong. The answer is the court does not know whether

a wrong is being committed. The obvious reply is that petitioner has shown to the court the way and the only way of determining whether the wrong is being committed. In this case, if wrong is being committed it is a tremendous thing. Untold millions in money and property may unlawfully be taken in the years to come because of a lack of necessary knowledge on which for a court to act.

It is said by counsel that a court of equity will not do that which is of no benefit to the party asking it and only an injury to the party coerced. That is perfectly true, but it does not seem to us to be applicable here. If the defendants are taking property of petitioner, either wilfully or inadvertently, and that wrong may be righted by the means sought here, can it be said that that would be of no benefit to the party asking it, and can it be said that that would work injury to the party coerced when the petition guaranties the party against any injury, offers to put up a bond for that assurance and to pay the costs of the proceeding? Counsel further say that equity is based upon moral right and natural justice. This is true, and our Supreme Court has said so, but is it not morally right and is it not justice that the fellow who is taking my property against my will should cease to do so? The question is not debatable. It is further said that a court of equity will of its own motion refuse to entertain a bill to enforce a mere valueless, abstract right. We have tried to show that this is not only not a valueless abstract right, but it is a precedent which will govern property rights, moral rights and moral justice as long as the oil fields in Illinois remain. In this case it applies to an immediate, specific right.

Counsel say that a court of equity will not exercise its extraordinary jurisdiction when it will operate inequitably or oppressively. If we follow this to a final analysis and interpret it literally we would have to say that whatever wrongs a party might be guilty of in the

way of taking another's property would work inequitably and oppressively against the taker because he would have to give up his ill-gotten gain. That maxim cannot apply to the facts and circumstances in the case at bar.

It is further urged that plaintiff has estopped itself from asking for relief because of drilling offset wells. We are not persuaded that one who is being injured loses his remedy because he does all in his power to minimize his injury.

It is true that no Illinois court has ever passed upon a situation exactly like the one here, but it is not an unheard of thing. Other States have statutes allowing it, and the highest courts in the land have approved of those statutes. So that we know that surveys of the character here described do exist. We know in this case that the truth about the situation exists; we know that there is but one way to find it out; that is the way sought by the petition herein. Here is an inherent right, if we can attach credence to the petition, its affidavits and its circumstances. Here is an undisclosed truth. In our judgment a court of equity with its broad powers for ascertaining the truth has the right to disclose the truth in this situation. The petitioner has offered every safeguard to protect the rights of the defendants. The court could compel that if petitioner had not so offered. There can be no injury in allowing this petition, to be compared to the damage to plaintiff if it shall turn out upon investigation that the things alleged in the petition herein are true. Sometimes it becomes necessary to do seeming evil in order that the greater good may follow.

In *Gavin v. Curtin,* 171 Ill. 640, our Supreme Court, speaking through Mr. Justice Boggs, wrote as follows: "There are certain general precepts or principles, denominated maxims, which a learned author declares 'are in the strictest sense *principia,*'—the beginnings out of which have developed the entire system of truth·

known as 'equity jurisprudence.' (1 Pomeroy's Eq. p. 390.) Another author of equal learning says: 'There are in equity several of these maxims in which the general principles of chancery jurisdiction, and the methods by which they are applied, are succinctly expressed. The first of these maxims is, that equity will not suffer a right to be without a remedy. The principle expressed by this maxim is, indeed, the foundation of equitable jurisdiction, because, as we have seen, that jurisdiction had its rise in the inability of the common law courts to meet the requirements of justice.' Bispham's Principles of Equity, 3d ed. p. 53.

"It is to be observed, the rights, to protect and preserve which these learned authors declare the courts of equity will provide a remedy, are not mere abstract moral rights, but rights recognized by the existing municipal law. The right possessed by the defendant in error in this case is one which belongs to the purview of municipal law and comes within the scope of juridical action, but the power of the courts of law, or their modes of procedure, are inadequate to furnish a complete remedy. It may be that an instance cannot be cited where a court of equity has been called upon to take jurisdiction and render relief in a case in all its aspects precisely the same as the case at bar, but that does not furnish a sufficient reason for declaring the jurisdiction does not exist. The expressions of this court in the case of *Dodge v. Cole*, 97 Ill. 338, are here in point. It was there said (p. 364): 'The jurisdiction of a court of equity does not depend upon the mere accident whether the court has, in some previous case or at some distant period of time, granted relief under similar circumstances, but rather upon the necessities of mankind and the great principles of natural justice, which are recognized by the courts as a part of the law of the land, and which are applicable alike to all conditions of society, all ages and all people. . . .

Where it is clear the circumstances of the case in hand require an application of those principles, the fact that no precedent can be found in which relief has been granted under a similar state of facts, is no reason for refusing it.' ''

We have given much serious concern to the mode of procedure in this matter. In this, as in other features of the case we are without precedent to guide us. We have come to the conclusion that these motions to dismiss merely tested the legal sufficiency of the petition at which they were directed. The hearing had was not a hearing on the merits of the petition. It was as if, under the old practice, a demurrer had been interposed and had been sustained by the court. The court allowed the motions and thereby held the petition legally insufficient. In this respect the court committed error which amounted to an abuse of discretion. In dismissing the complaint in pursuance of its ruling on the petition and what followed immediately thereafter, it follows, in our judgment, that the trial court committed error which must work a reversal of the case. We hold that the petition for the survey was legally sufficient.

In our judgment the petition for the survey herein is not a matter to be heard *ex parte*. Neither do we think that the sections of our mining act invoked here furnish direction in procedure.

The decree of the circuit court is reversed and the cause is remanded with directions to that court to deny the motions to dismiss the petition for the survey and to enter a reasonable rule on defendants to answer said petition. Upon the filing of answer the court shall make up an issue on said petition and answer and determine as a matter of fact whether said petition should be allowed. We have tried to settle the questions of law involved.

Should defendants fail or refuse to answer said petition, then the court shall allow said petition and order a directional subsurface survey under the direc-

tion of the court after exacting from petitioner ample safeguards for the protection of defendants' rights and their security; and if it shall appear to the court upon further examination of the petition for said survey that the terms and conditions offered therein are not satisfactory to the court, the court shall make such terms and such conditions as seem meet for the proper, expeditious and efficient survey of the character prayed for in the petition.

*Reversed and remanded with directions.*