[Civ. No. 16314.   Second Dist., Div. Three.   Nov. 24, 1948.]

EDNA SHIVE et al., Appellants, v. KATHRYN LEWIS BARROW, Respondent.

Hiram T. Kellogg for Appellants.

Glen Behymer and Esther D. Hunt for Respondent.

VALLEE, J.—Plaintiffs appeal from a judgment entered upon the sustaining of a demurrer to their third amended complaint, which is in two counts. They were given leave to amend. They declined to do so. Judgment followed dismissing the action. The action is one to impose a constructive trust on real property devised to defendant by the will of her husband, Zelza D. Barrow, deceased, the plaintiffs being the children of a predeceased wife of the deceased.

The first count is in the usual form of an action to quiet title. The essential facts alleged in the second count are these: In 1925 Zelza D. Barrow and Lula R. Barrow were husband and wife. Plaintiffs are the children of Lula by a previous marriage. In 1925, Lula and Zelza were the owners of a parcel of real property in the county of Los Angeles, purchased with the separate funds of Lula. In 1925, Lula and Zelza made an oral agreement with plaintiffs by which it was agreed that plaintiffs "would agree to advance sums of money amounting to $1200.00 or thereabouts" to Lula to pay part of the cost of erecting improvements and a building upon the property, and in which it was agreed that if plaintiffs "would advance various sums of money, as needed" for said purposes, Lula would hold title to the property during her lifetime, that she and Zelza would occupy and use it during their lifetime, collect the income and use it to pay living expenses, taxes and interest on any encumbrances on the property. In 1926, Zelza quitclaimed his interest in the property to Lula. Lula and Zelza at the time the agreement was made and "upon numerous occasions thereafter" stated that Lula would continue to hold title during her

lifetime and upon her death the property "would be and become the property of the plaintiffs." Plaintiffs relied upon the agreement and from time to time advanced money during construction of the building in the aggregate sum of $1,200, and, in addition, performed work, labor and services and procured the performance of work, labor and services in the erection of the building. In 1932, Lula and Zelza made a further oral agreement with plaintiffs that if plaintiffs would advance additional sums of money, necessary at that time for the payment of taxes and interest, Lula "would agree to make and execute any and all instruments or documents necessary" to convey the property to plaintiffs at the death of Lula, subject to the right of Zelza to a life estate, and in the event the property was sold after the death of Lula and during the lifetime of Zelza, Zelza would receive one-half of the proceeds realized from the sale of the property. Plaintiffs relied upon this agreement and continued to make advances "aggregating $3,000.00 or thereabouts." In 1934, Lula recorded a declaration of homestead upon the property. On October 12, 1940, Lula and Zelza executed two wills to give written effect to the oral agreements between themselves and plaintiffs. By her will, Lula devised a one-half interest in all of her property to Zelza and a one-half interest to the plaintiffs. It provided that Zelza's interest was to be a "life estate interest," that if the property was sold during his lifetime he was to receive one-half of the proceeds from the sale, and if he passed away before the property was sold his interest was to go to plaintiffs. Zelza's will devised all of his real estate to Lula and in the event she predeceased him to the plaintiffs and his daughter by a previous marriage. At the time Zelza executed the will he stated that by making his will "he would avoid any claim of title that might arise by reason of the Declaration of Homestead theretofore made by Lula . . . in the year 1934 and . . . would make the agreement between the parties effective for all purposes notwithstanding the Declaration of Homestead." Lula died on December 4, 1940. On January 27, 1941, her will of October 12, 1940, was admitted to probate and Zelza qualified as administrator with the will annexed and continued to act as such until his death. During his lifetime Zelza never repudiated his agreement with the plaintiffs, and on two occasions stated to one of them that he intended to secure distribution in the estate of Lula, distributing title to the property to plaintiffs in accordance with their agreement.

Plaintiffs relied upon these statements. After Lula's death, "and in his lifetime," Zelza married defendant. Thereafter he made a will by which he devised the property to defendant. He died September 10, 1943. Defendant probated his will. A decree of distribution was entered in his estate distributing the property to defendant. Defendant claims to be the owner of the property by reason of the decree of distribution and the declaration of homestead. The complaint prays for equitable relief decreeing that plaintiffs are the owners of the property and that defendant has no right, title or interest therein; for an accounting of rents received by defendant, and a determination of the rights of the parties, including the right to ownership and possession.

It appears to be conceded that all of the facts upon which appellants rely as the basis of their first count are alleged in the second count and that unless the second count states facts sufficient to constitute a cause of action the demurrer was properly sustained. ■■■ Having specifically set forth the links in their alleged chain of title, the general allegation of ownership is treated as a conclusion of law from the facts alleged. It does not cure defects, if any, in the specific facts pleaded. (21 Cal.Jur. § 20, p. 37; *Prudential Petroleum Co.* v. *Peck,* 132 Cal.App. 4, 8 [22 P.2d 559]; cf. *Modlin* v. *Walter's Fur Shop,* 83 Cal.App.2d 384, 390 [188 P.2d 805]; *Fruns* v. *Albertsworth,* 71 Cal.App.2d 318, 321 [162 P.2d 666]; *Rose* v. *Ames,* 53 Cal.App.2d 583, 589 [128 P.2d 65].) The gist of the action seems to be an attempt to enforce in equity two alleged oral agreements—one made in 1925, to devise property in consideration of plaintiffs' promise to "advance various sums of money as needed, for the erection and construction" of improvements on the property and to perform work in the erection and construction of a building; the other, made in 1932, that Lula would execute all instruments necessary to preserve for herself and Zelza a life estate in the property, "conveying" it to plaintiffs at the death of Lula subject to a life estate in Zelza in consideration of plaintiffs' promise to "advance additional sums of money then and at said time necessary and thereafter to become necessary for the payment of taxes and interest upon the encumbrance" on the property.

Appellants say that the main issue to be determined is whether they have pleaded a cause of action that is not barred by the statute of frauds.

An agreement which by its terms is not to be performed during the lifetime of the promisor, or to devise any property, or to make any provision for any person by will, is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged, or by his agent, and evidence of the agreement cannot be received without the writing or secondary evidence of its contents. (Code Civ. Proc., § 1973; Civ. Code, § 1624.) ▮ The agreements alleged come directly within these provisions of the statute of frauds. ▮ A will, even a mutual will, is ambulatory until death and may be revoked notwithstanding an agreement not to revoke. (Prob. Code, § 23; *Notten* v. *Mensing*, 3 Cal.2d 469, 473 [45 P.2d 198]; *Estate of Rolls*, 193 Cal. 594, 601 [226 P. 608].) ▮ An agreement not to revoke an existing will is, in effect, the same as an agreement to make a will and must be in writing. (*Cazaurang* v. *Carrey*, 117 Cal.App. 511, 514 [4 P.2d 259].) ▮ If there is a valid agreement to make a will and the agreement is fair and reasonable and adequately supported by consideration equity will grant a sort of quasi specific performance by making the party who receives the estate a constructive trustee for the intended beneficiary in accordance with the terms of the agreement. (*Notten* v. *Mensing*, 3 Cal.2d 469, 473 [45 P.2d 198]; *Rolls* v. *Allen*, 204 Cal. 604, 607 [269 P. 450].) ▮ Though the estate may be probated and the property distributed accordingly, if there is a valid agreement to make a will which is certain and definite, and founded upon an adequate consideration, the court, in an action by the promisee, will impose a constructive trust upon any particular property in the hands of the individual distributee. (Civ. Code, §§ 3384-3391; *Bank of California* v. *Superior Court*, 16 Cal.2d 516, 524 [106 P.2d 879]; *Lynch* v. *Lichtenthaler*, 85 Cal.App.2d 437, 442 [193 P.2d 77]; *Notten* v. *Mensing*, 20 Cal.App.2d 694, 698 [67 P.2d 734]; *Sonnicksen* v. *Sonnicksen*, 45 Cal. App. 2d 46, 53 [113 P.2d 495].) ▮ The oral agreements alleged were that plaintiffs would pay money, perform services, and procure the performance of services. The services were the making of improvements to the property and erecting a building thereon. No facts are alleged from which it could be concluded that the services were of such a peculiar character that it was or is practically impossible to estimate their value by any pecuniary standard. There is a long line of decisions in this state to the effect that the law gives plaintiffs an adequate remedy for breach

of the agreement, or for the money advanced and for compensation for the services rendered, and that equity will not grant quasi specific performance of the agreement when such remedies are available. *De Mattos* v. *McGovern*, 25 Cal.App.2d 429 [77 P.2d 522], was an action seeking specific performance of an oral agreement to bequeath property in compensation for services rendered and to be rendered. The court stated (p. 432) : "An oral agreement to make a will or to leave property by deed in compensation for services rendered, or to be rendered, is not enforceable as such. The remedy is one in *quantum meruit* for the value of the services rendered. (*Zellner* v. *Wassman*, 184 Cal. 80, 84, 87 [193 P. 84] ; *Morrison* v. *Land, supra* [169 Cal. 580 (147 P. 259)], pp. 586, 590; *Ruble* v. *Richardson*, 188 Cal. 150, 154 [204 P. 572] ; *Lauritsen* v. *Goldsmith*, 99 Cal.App. 671, 675 [279 P. 168] ; *Burr* v. *Floyd*, 137 Cal.App. 692, 696 [31 P.2d 402].) Equity follows the law and, when the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies. (10 R.C.L., p. 382; *Magniac* v. *Thomson*, 15 How. 281, 299, 302 [14 L.Ed. 696] ; *Federal Land Bank* v. *Wilmarth*, 218 Iowa 339 [252 N.W. 507, 513, 94 A.L.R. 1338]. Where the law gives a party an adequate remedy by way of an action in damages for breach of contract, or for compensation for the services rendered under it, a court of equity may not grant specific performance of such a contract. (*Flood* v. *Templeton*, 148 Cal. 374, 378 [83 P. 148] ; *Morrison* v. *Land, supra* [169 Cal. 580], p. 586.) . . . There is, however, complete harmony in the cases holding to the rule that, where the oral contract to compensate by will was made in consideration of services rendered or to be rendered, the promisee's remedy is one at law to recover the reasonable value of his services. It is equally well settled that before the promisee may maintain an action for that purpose he must file a claim against the estate. (*Morrison* v. *Land, supra* [169 Cal. 580], p. 585.) Finally, no principle is more firmly settled than that equity will not come to the aid of one who, through his own delay and own fault, has lost the remedy which the law has provided." (See, also, *Zaring* v. *Brown*, 41 Cal.App.2d 227 [106 P.2d 224] ; *Bonnear* v. *Bank of America*, 84 Cal.App.2d 107 [190 P.2d 307].)

In *Bogan* v. *Wiley*, 72 Cal.App.2d 533 [164 P.2d 912], the plaintiff sued for specific performance of an oral agreement to leave by will a one-half interest in a business partnership. In holding that the defendants were not estopped from raising

the defense of the statute of frauds, the court stated the principles applicable here (p. 539) : ''If appellant had any cause of action it was one against the estate for damages for breach of the contract, or in quantum meruit for the value of the services rendered under it. . . . The fact that he could not have recovered in an action at law, or that he lost the right by failure to pursue it does not justify the appeal to a court of equity. (*De Mattos* v. *McGovern, supra* [25 Cal.App.2d 429].) *Morrison* v. *Land,* 169 Cal. 580, 586, 590 [147 P. 259], states the rules which are conclusive here. (P. 586.) 'Passing without discussion other requisites, it is elementary that where, as here, the primary right of a party is *legal* in its nature, as distinguished from *equitable,* and one for which the law affords some remedy, as here damages by way of compensation for breach of contract, a proper exercise of the equitable jurisdiction will not give equitable relief in any case where the legal remedy is full and adequate and does complete justice. No principle of equitable jurisprudence is more firmly established than this. (1 Pomeroy's Equity Jurisprudence, sec. 221.) For instance, the exclusive jurisdiction of equity to grant relief by way of specific performance of a contract will be exercised only in those cases where the legal remedy of compensatory damages is insufficient under the circumstances of the case, in the opinion of the court, to do complete justice between the parties.' And (p. 590) 'An ordinary action at law for breach of the contract would bring him the very thing to which he is entitled under the allegations of his complaint—afford him full and adequate relief. In such an action, the measure of damages would have been the value of the property agreed to be bequeathed, for that was the amount in which he was damaged by the breach.' (See *Flood* v. *Templeton,* 148 Cal. 374, 378 [83 P. 148] ; *Zellner* v. *Wassman,* 184 Cal. 80, 84, 87 [193 P. 84] ; *Ruble* v. *Richardson,* 188 Cal. 150, 154 [204 P. 572] ; *Long* v. *Rumsey,* 12 Cal.2d 334, 342 [84 P.2d 146].)''

In the recent case of *Murdock* v. *Swanson,* 85 Cal.App.2d 380 [193 P.2d 81], the oral agreement sought to be specifically enforced was that the plaintiff would care for the decedent, render personal services to her and furnish her with certain goods during the remainder of her lifetime; that she would assist her in caring for her property to the extent that might be necessary to preserve the property and prevent its sale; and that, if necessary, she would care for the decedent in her own home or in plaintiff's home to the end that she should not

be sent to an institution, in consideration of which the decedent agreed to make and leave a will leaving her ranch and all her other real and personal property to the plaintiff. It was alleged that pursuant to the agreement plaintiff made trips from her home to the home of decedent, a distance of many miles, on the average of twice a day; that she performed various personal services for the decedent and worked on her ranch; that she furnished laborers from time to time to construct fences and do other work on the ranch; that she furnished decedent with food, clothing, drugs and medicine and other articles, including a milk cow and other animals for her ranch; that she acted as sole companion to the decedent; that these various services continued until the decedent died, and that in order to devote her time to the decedent she sold her business at a great loss with respect to the good will and future profit. It was also alleged that the plaintiff has received no compensation for these services; that the decedent left no will; that the services and things so furnished by her are not susceptible of pecuniary compensation or measurement. The trial court sustained a demurrer to this cause of action without leave to amend. In affirming the judgment the court, after stating the rule set forth in the foregoing cases that oral agreements of this nature are unenforceable and that recovery for personal services must be based upon the theory of *quantum meruit*, held (p. 384): ''No sound reasons appear why similar rules should not apply with respect to the furnishing of any goods, wares or merchandise. In some cases where some form of fraud sufficiently appears, and where no remedy at law exists, it has been held that equity will intervene and in effect permit a quasi specific performance by impressing a trust upon the property for the benefit of a claimant who would otherwise be defrauded and deprived of any remedy. The appellant contends that this is such a case and relies particularly on *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154]; *Notten* v. *Mensing*, 3 Cal.2d 469 [45 P.2d 198]; *Wilson* v. *Bailey*, 8 Cal.2d 416 [65 P.2d 770]; *Van Fossen* v. *Yager*, 65 Cal.App.2d 591 [151 P.2d 14]; and *Loper* v. *Flynn*, 72 Cal.App.2d 619 [165 P.2d 256]. In all of these cases except the first the injured party had given up property on an oral agreement that he or his heirs would receive certain things, the defendant or his heirs had received the benefits and then refused to comply, a definite fraud appeared, and no other remedy existed. In the first of these cases, *Seymour* v. *Oelrichs*, an estoppel was based upon an

unusual set of circumstances where no other remedy was available. In none of these cases were the equitable rules applied in order to provide a means of payment for personal services, and in none where another remedy existed. . . . There can be no question that there was also an adequate remedy at law here with respect to any goods or articles furnished to the decedent by the appellant." (See, also, *Van Core* v. *Bodner*, 77 Cal.App.2d 842, 847 [176 P.2d 784]; *Brown* v. *Freese*, 28 Cal.App.2d 608, 615 [83 P.2d 82]; *Kurtz* v. *de Johnson*, 42 Cal.App. 221, 227 [183 P. 588].) Plaintiffs had an adequate remedy at law for moneys advanced and for the value of the services rendered and procured.

To enforce in equity by quasi specific performance an oral agreement to bequeath or devise property, all conditions applicable to all demands for specific performance must be present. *Harris* v. *Larter*, 36 Cal.App.2d 587 [97 P.2d 1035], states the rule (p. 591): "In *Monsen* v. *Monsen*, 174 Cal. 97 [162 P. 90], after pointing out the manifest danger of fraud in permitting the course of disposition of a decedent's property to be altered by parol testimony, the court said: 'While the cases which we have cited declare the propriety of an enforcement, in equity, of contracts to make a particular disposition of property upon the death of the promisor, they all agree that enforcement will not be decreed except upon the conditions applicable to all demands for specific performance. One of these is that the terms of the agreement must be definite and certain. Section 3390 of the Civil Code, in enumerating the obligations which cannot be specifically enforced, concludes: "(6) An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." ' " In *Reyburn* v. *Young*, 11 Cal.App.2d 476 [54 P.2d 87], it was said (p. 477): "This, being an action in equity to enforce an agreement to dispose of property in a particular way by last will and testament, is one which is referable to the subject of specific performance for the principles of law applicable. (*Rundell* v. *McDonald*, 62 Cal.App. 721, 728 [217 P. 1082].) It is well settled that, to entitle a party to specific performance, he must have (a) performed, (b) offered to have performed, or (c) proved a sufficient excuse for not performing, all the conditions required of him by the terms of the contract. (Civ. Code, sec. 3392; *Goodale* v. *West*, 5 Cal. 339; *Cates* v. *McNeil*, 169 Cal. 697, 707 [147 P. 944].)" (See, also, *Grimes* v. *Steele*, 56 Cal.App.2d 786, 789 [133 P.2d 874]; Anno: 169 A.L.R. 55.)

848

■ The agreements alleged are neither definite nor certain. The agreement of 1925 was that plaintiffs "would agree" to advance various sums of money "as needed." They advanced "$1200 or thereabouts." Whether they in fact agreed to advance any money is not alleged. Whether they advanced as much "as needed" is not pleaded. The amount actually advanced is uncertain. It is alleged that in addition to advancing money plaintiffs performed and procured the performance of services. It is not alleged that the performance of services or the procuring of them was a part of their agreement. What services were performed or procured is not pleaded. It is first alleged that the agreement was that upon the death of Lula, Zelza was to have a life estate. It is then alleged that upon the death of Lula the property was to go to plaintiffs. It is not alleged that plaintiffs duly performed all the conditions of the 1925 agreement on their part to be performed. The agreement of 1932 was that if plaintiffs would advance additional moneys necessary for the payment of interest and taxes, Lula—not Zelza—"would agree" to execute all documents necessary to "convey"— not will—the property to plaintiffs at the death of Lula subject to a life estate in Zelza, and that they "continued to make advances aggregating $3,000 or thereabouts." Whether plaintiffs advanced the amount necessary for the payment of taxes and interest is not set forth. The amount advanced is indefinite. It is not alleged that plaintiffs duly performed all of the conditions of the 1932 agreement on their part to be performed.

■ It is well settled that neither the payment of money, even though it is the full amount agreed to be paid, nor the rendering of services, which formed the consideration of an oral agreement, is a sufficient part performance to take an oral agreement out of the statute of frauds or to authorize a decree of specific performance. (*Denio* v. *Brennecke*, 6 Cal.App.2d 678, 681 [45 P.2d 229]; *Forbes* v. *City of Los Angeles*, 101 Cal.App. 781, 787-788 [282 P. 528]; *Owens* v. *McNally*, 113 Cal. 444, 450 [45 P. 710, 33 L.R.A. 369]; *Cordano* v. *Ferretti*, 15 Cal.App. 670, 673 [115 P. 657].)

■ The execution of a will in accordance with an oral agreement which does not expressly refer to the agreement does not constitute a note or memorandum sufficient to satisfy the statute of frauds. ■ The making of a will by the promisor conforming to an oral agreement is not part performance of the agreement. (*Notten* v. *Mensing*, 3 Cal.2d 469,

473, 474 [45 P.2d 198], and cases there cited; *Rolls* v. *Allen,* 204 Cal. 604, 608 [269 P. 450].)

*Pellerito* v. *Dragna,* 41 Cal.App.2d 85 [105 P.2d 1011], the only authority relied upon by appellants, is distinguishable. In that case the court found that the promisor had fraudulently conveyed his interest in joint tenancy real property which he had orally, for a consideration, agreed not to convey. On appeal it was held that the finding was supported by the evidence. The court also found that the promisee had fully performed her part of the agreement. So far as appears, no question was raised on the appeal as to the nature or adequacy of the consideration. Whether the promisee had pursued the proper remedy was not raised or discussed. The questions here presented—whether quasi specific performance lies to enforce an oral agreement to devise property, the consideration for which is the payment of money and the rendition of services, and whether the giving of such consideration is sufficient part performance to take the oral agreement out of the operation of the statute of frauds—were not advanced or considered by the court in its opinion. In the Pellerito case the promisor had partly performed the oral agreement by placing the real property in joint tenancy with himself and the promisee as joint tenants.

Appellants argue that because it has been held that property may be converted into community property at any time by oral agreement between the spouses (*Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905]; *Estate of Wilson,* 64 Cal.App.2d 123 [148 P.2d 390]), the principle should apply to "an agreement between spouses respecting the retention of testamentary disposition of property held as a homestead where the party making the declaration of homestead was also the holder of the title as her sole and separate property." The argument seems to be that Lula owned the property as her separate property, that she recorded a declaration of homestead thereon, hence she could orally agree with her husband that she should retain testamentary disposition of the property and that the property would not vest in him by right of survivorship. (See, Prob. Code, §§ 660, 663; *Estate of Simonton,* 183 Cal. 53, 59 [190 P. 442]; *Selinger* v. *Milly,* 51 Cal. App.2d 286, 292 [124 P.2d 631]; *Robson* v. *Meder,* 66 Cal. App.2d 47, 49 [151 P.2d 662].) To so hold would do violence to the express provisions of the statute of frauds and would effect an abandonment of a homestead in a manner prohibited by Civil Code, sections 1242, 1243. The statute provides the

exclusive method by which a homestead may be abandoned. (*Selinger* v. *Milly, supra,* p. 290.) In any event, the point is not material. If there had been a valid written agreement by which the husband had agreed to devise the property to plaintiffs it would be immaterial how he acquired title to the property, whether by right of survivorship because of a homestead or by way of a devise from Lula. For the same reason it is likewise of no materiality that the property is capable of division so that only a part thereof is necessary as a homestead.

Appellants also urge that the complaint should be treated as stating a cause of action for declaratory relief and that consequently the demurrer should have been overruled. Treating the complaint as an attempt to state a cause of action for declaratory relief, it still does not state facts sufficient to constitute a cause of action for the reasons heretofore stated.

We are satisfied that the third amended complaint does not state a cause of action against respondent.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.