[Civ. No. 18355.   Second Dist., Div. Three.   Jan. 25, 1952.]

STUART N. WEST, Plaintiff and Appellant, v. KATHA-RINE ELIZABETH STAINBACK, Defendant and Appellant.

Margolis & McTernan, William B. Murrish, John W. Porter and Ben Margolis for Plaintiff and Appellant.

Knight, Gitelson, Ashton & Hagenbaugh for Defendant and Appellant.

VALLÉE, J.—Plaintiff brought this action to impress a trust on a parcel of realty, the record title to which is in defendant, and to compel a conveyance thereof or to impose an equitable lien thereon. Judgment was rendered for plaintiff, impressing a trust on the property and decreeing that plaintiff has an equitable lien thereon to the extent of $30,000. Both parties appeal from the judgment.

The Honorable Henry M. Willis, the trial judge, filed a memorandum opinion which is part of the record on appeal. (Rules on Appeal, rule 5a; 36 Cal.2d 1, 5.) Thereafter findings of fact and conclusions of law, substantially in the same form as set forth in the opinion, were made and judgment entered accordingly. We are in accord with that opinion, and it is adopted and made a part of this decision, with deletions and additions for the purpose of discussing contentions made by the parties in their respective appeals.

The opinion reads: "[The causes of action on which relief will be granted are in] the nature of specific performance (of late denominated 'quasi-specific performance') whereby plaintiff seeks to impress a trust upon certain real property described, and of which title is held by defendant, to effect performance of an oral promise of defendant's predecessor in interest [Pearl P. Arbuckle] to will to plaintiff at her death the equivalent of the estate of plaintiff's deceased wife [Edith Arbuckle West], to which such predecessor [Pearl P. Arbuckle] was about to secure title and possession under a will of plaintiff's wife. That estate consisted of bonds, stocks, money, notes and real property. Prayer was also included for an accounting of rents, issues and profits accruing upon the real property described since the death of the predecessor [Pearl P. Arbuckle] on February 23, 1947.

"Plaintiff relies upon the provisions of section 2224 of the Civil Code as the foundation of his first cause of action. That section reads as follows: 'One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.'

"In the most recent decision of our appellate courts upon this subject, the court, on March 8, 1950, in the case of *Strausburg* v. *Connor,* [96 Cal.App.2d 398 (215 P.2d 509)] at pages [399 and 400] after quoting section 2224, Civil Code, in part, presented a sort of accurate preview of this case by a thumbnail sketch of legal aspect of a typical case under the section quoted in the following language:

" 'Trusts arising from transactions within the scope of the code provisions fall within the class of trusts created by operation of law and are commonly called constructive trusts. Concerning such trusts it was said in *Rankin* v. *Satir,* 75 Cal. App.2d 691, 695 [171 P.2d 78]:

" ' "Constructive trusts of this form are not based primarily on the intention of the parties but are forced on the conscience of the trustee by equitable construction and the operation of law. (*Millard* v. *Hathaway,* 27 Cal. 119.) In such trusts, based upon fraud or wrongdoing, an oral promise is sufficient and the existence or absence of a confidential relationship between the parties, in the strict sense, is not controlling. (*Brison* v. *Brison,* 75 Cal. 525 [17 P. 689, 7 Am.St. Rep. 189].) 'Such trusts are creatures of equity, and take form whenever title is obtained by means of chicanery, deceit or other variety of fraud actual or constructive.' (*Sanguinetti* v. *Rossen,* 12 Cal.App. 623 [107 P. 560].) In order to create a constructive or involuntary trust, as defined in section 2224 of the Civil Code, no conditions other than those stated in that section are necessary. (*Lauricella* v. *Lauricella,* 161 Cal. 61 [118 P. 430].) . . . As was said in *Brazil* v. *Silva,* 181 Cal. 490 [185 P. 174], 'The instances of its application are as various nearly as the ways in which property can be wrongfully acquired.' " (See, also, *Steinberger* v. *Steinberger,* 60 Cal.App.2d 116 [140 P.2d 31].)'

"In the case of *Murdock* v. *Swanson,* 85 Cal.App.2d 380, at page 384 [193 P.2d 81], the court stated: 'In some cases where some form of fraud sufficiently appears, and where no remedy at law exists, it has been held that equity will

intervene and in effect permit a quasi specific performance by impressing a trust upon the property for the benefit of a claimant who would otherwise be defrauded and deprived of any remedy. . . . (Citing cases.) In all of these cases . . . the injured party had given up property on an oral agreement that he or his heirs would receive certain things, the defendant or his heirs had received the benefits and then refused to comply, a definite fraud appeared, and no other remedy existed.'

"With this preview of the legal principles guiding and controlling in such cases, it becomes proper, in order of presentation, to present at this point a brief sketch of the pertinent and ultimate facts, as distinguished from the probative facts (too numerous to recount or state), which have been developed during the long trial of this case and which will be used as basis for the legal conclusions to follow.

"Mrs. Pearl P. Arbuckle (now deceased) was a widow residing . . . for many years . . . in Venice, California. With her lived her infant daughter Edith, whose father had died leaving an estate to the daughter consisting of lands, stocks, bonds, notes, mortgages and money, and on August 17, 1904, the mother, Pearl P. Arbuckle, was appointed guardian of the daughter's estate by the probate court in Los Angeles County, which estate was appraised at and shown to be of the value of approximately $30,000.00.

"On August 16, 1916, the daughter Edith, then seventeen years of age, while on her way to return to a school in Tennessee, met and married plaintiff, Stuart N. West, at Memphis, Tennessee, and the couple proceeded to take up residence in plaintiff's home in Mississippi. To that home came Pearl P. Arbuckle, the mother, for a visit in the spring of 1917, and learning that the daughter was to bear a child, prevailed upon her and her husband to permit the mother to remove her daughter to the home in Venice so that the mother could care for her daughter during the period of childbirth. They arrived in California on or about March 1, 1917, plaintiff remaining in his home and at his work in Mississippi. After her arrival in California Edith became seriously ill from some complaint not related to her pregnancy. The plaintiff husband was sent for and upon his arrival it was decided to take her to a hospital. On the day she was taken to the hospital, and prior to her removal, the mother, without the knowledge of plaintiff, prevailed upon her daughter Edith to execute a witnessed will leaving all her estate to her mother in trust

for her unborn child, and in case of predecease of said child, all the estate was left to the mother, no mention being made of the husband. It is clear from the surrounding circumstances and later admissions of the mother that she used undue influence to secure this will, as the daughter Edith intended, and so declared almost simultaneously with her execution of the will, that she was going to will all her estate to her husband.

"Edith's baby was still-born on July 7th and on July 9th, 1917, she died. Plaintiff was present at the time of death and was made aware a few days later of the contents of his wife's will. He was shocked and aggrieved by such information and became ill for a short time and then, nursing his grief, he returned to his home in Mississippi.

"On July 25, 1917, Pearl P. Arbuckle filed her petition for probate of Edith's will. On January 18, 1918, Edith's estate was appraised in the sum of $29,111.56. On August 21, 1917, plaintiff, having returned to Los Angeles, retained counsel and filed objections to the probate of Edith's will on the grounds, among others, of undue influence and unsound mind, and at the same time filed a petition for the removal of Pearl P. Arbuckle as guardian of the estate of Edith, her daughter, for mismanagement and maladministration thereof. The immediate effect of these charges was to produce in Pearl P. Arbuckle a great exhibition of fear of exposure of wrongdoing.

"On August 29, 1917, after conferences between plaintiff and Pearl P. Arbuckle and others, including counsel, and upon Mrs. Arbuckle's urgent pleading, plaintiff executed documents by which he dismissed his contest of his wife's will and his petition for removal of Pearl P. Arbuckle as guardian of the daughter's estate, in sole consideration of an oral promise made by Pearl P. Arbuckle that she would at her death leave to plaintiff the equivalent of Edith's estate. No money or other consideration was paid to plaintiff. No specification of the character of such bequest or devise was stated, but at the time it was known to them all that Mrs. Arbuckle had a number of parcels of land of very considerable value in addition to that left her by her daughter Edith. At the time of the execution of the dismissals, and upon the same promise, plaintiff, without any consideration except said promise, also signed a quitclaim deed and a bill of sale conveying to Pearl P. Arbuckle all possible interests in his wife's estate.

"After this plaintiff returned to Mississippi, Mrs. Pearl P. Arbuckle proceeded with the probate of the daughter's will and the closing up of the guardianship estate. The estate of Edith West was distributed to Pearl P. Arbuckle by order entered March 15, 1919, and the final account of the guardian was approved, showing a balance to be turned over to the estate of Edith West of the value of $28,669.95, and the final discharge of the guardian was filed April 3, 1919.

"In 1923 Pearl P. Arbuckle visited plaintiff in Mississippi and prevailed upon him to return with her to California and live in her home as her son. She stated she had misjudged him in assuming he had married Edith for her money only, and had done him an injustice, in prevailing on her daughter to leave him nothing in her will, and that she wished to make good her promise to will him an equivalent of that estate by purchasing with moneys derived from Edith's estate, with down payment of $30,000, a parcel of real estate which he could operate during her lifetime and which could be left to him at her death, in whole or in part, or used to satisfy her promise. He acquiesced in this plan and Pearl P. Arbuckle purchased the lots described as Parcel A in paragraph VIII of the second amended complaint [the property here involved], situated at the corner of Figueroa Street and Slauson Avenue in Los Angeles, California.

"This episode and the statements and acts connected therewith served only to confirm and make more certain the terms of the promise originally made, and no change in that promise or substitution of a new obligation with intent to extinguish the old obligation was intended by either party.

"On this parcel was located an oil service station which Pearl leased to plaintiff, title being held in her name, but after several months it appeared that the use of the property for an oil station was not profitable to Pearl, so she canceled the lease to plaintiff and leased it to others for a general market. Plaintiff continued to live at the Arbuckle home for a year or so after that, engaging in other occupations, and then ceased, except for visits, because his other business ventures called him elsewhere. This situation remained about the same until the year 1938, when, because of failing health of Mrs. Arbuckle, an attending nurse wrote to Mrs. Arbuckle's half sister, Mrs. Virginia Stainback, in Memphis, Tennessee, suggesting that some member of the family should come out and live with Mrs. Arbuckle and take care of her and her property, with poorly covered suggestion of succeeding to the same

by will. As a consequence, the Stainbacks—wife, husband and daughter—decided to send and did send the daughter, Katharine Stainback, defendant herein, to live with Mrs. Arbuckle, arriving May 26, 1938. This niece of Mrs. Arbuckle was a young, unmarried woman of pleasing manner and gracious, and was well liked by her aunt. She immediately took charge of the Arbuckle household affairs. In December, 1938, the half sister, Virginia Stainback, mother of Katharine, arrived and took up residence with Mrs. Arbuckle.

''During the period in which Katharine and her mother lived with Mrs. Arbuckle, there began and was carried out a gradual sequestration of Mrs. Arbuckle from visits or interviews with others, excluding former intimate friends, as well as her longtime business agent and plaintiff himself, who never saw Mrs. Arbuckle after 1938. In the first week in November 1939, William Stainback, an experienced real estate broker, Katharine's father, arrived and took up residence in Mrs. Arbuckle's home and at once assumed to conduct and manage her affairs. He promptly vetoed advice of Mrs. Arbuckle's longtime and trusted agent who had managed all her business affairs and real estate transactions for some years, resulting in his retirement as her business agent, consulted attorneys, and he also prepared or had prepared a will for Mrs. Arbuckle to sign; and with his wife's aid and his daughter's full knowledge and acquiescence he procured her to execute the same, while confined to her bed by illness, on November 19, 1939, by which she left all her property to Katharine Stainback, her niece, without mention of plaintiff or the promise she had made him long years before, and which up to this last period from 1938 onwards she had often expressed an intention of performing. Then on February 16, 1940, Pearl P. Arbuckle, without advice of any person outside the Stainback family, executed deeds conveying to Katharine all her real property, a bill of sale of all personal property, and a general power of attorney to take and handle all her affairs, including the bank accounts of the donor, all without any consideration. This finally accomplished the plan by which Katharine became owner and in possession of all of her aunt's estate, and as a result of which Mrs. Arbuckle was prevented from ever performing her promise to plaintiff.

''It is made manifest that at all times after Katharine arrived in 1938, Mrs. Arbuckle was of weakened mind and a ready victim of undue influence. Her memory was failing

to the extent that she did not recognize old friends and constantly confused Katharine, her niece, with Edith, her daughter, long dead. In 1942, her mental and physical condition was such that the Stainbacks procured her entry into a private sanitarium for proper care, attention and restraint, Katharine paying all expenses incurred. There she remained until her death on February 23, 1947. In the meantime, Katharine had not only appropriated all the personal income derived from rents and bank accounts, but had sold two of the parcels of real estate deeded to her by her aunt, for a substantial amount aggregating the sum of $28,000, and had paid all that and more into the purchase of an extensive farm in Mississippi, where she had installed her parents and to which she removed in 1945, leaving the aunt in the sanitarium where she died in 1947. The Parcel A, located at the corner of Figueroa and Slauson in Los Angeles, and which was purchased in 1923 by Mrs. Arbuckle for about $57,000, still remains in Katharine's name and is available for disposition under proper order of this court.

"Upon the death of Pearl P. Arbuckle, her will of November 19, 1939, was offered for probate on March 27, 1947, and was admitted to probate April 17, 1947. The inventory filed therein showed only an amount of cash in bank in the sum of $920.22. . . .

"Legal Conclusions

"1. The oral agreement of Pearl P. Arbuckle to will to plaintiff the equivalent of the estate of Edith West was supported by a sufficient consideration. (*Bacon* v. *Kessel*, 31 Cal.App.2d 245, 248 [87 P.2d 857]; *Shive* v. *Barrow*, 88 Cal.App.2d 838, 843 [199 P.2d 693].)

"2. The full performance by plaintiff of his part of the oral agreement with Pearl P. Arbuckle removes the agreement, by means of equitable estoppel, from the bar of the provisions of section 1973, subdivision 6, of the Code of Civil Procedure, and from that of section 1624, Civil Code—commonly called the statute of frauds. (*Bacon* v. *Kessel, supra,* [31 Cal.App.2d 245, 250 (87 P.2d 857)].)

"3. Under the circumstances herein, involving a change of position on his part as to Mrs. Arbuckle, plaintiff's right to quasi specific performance is not barred by any statute of limitations, and defendant is equitably estopped from pleading or relying upon the bar of the statute of frauds. (*Bacon* v. *Kessel, supra,* [31 Cal.App.2d 245, 251]; *Notten* v. *Mensing,*

3 Cal.2d 469, 473 [45 P.2d 198]; *Ryan* v. *Welte,* 87 Cal.App. 2d 897, 903 [198 P.2d 357].)

"4. The agreement to make a will was valid in respect to its character of being clear, certain and definite in its terms, and was fair and reasonably and adequately supported by consideration, and therefore is basis for equity to grant a sort of quasi specific performance by making the party who receives the estate a constructive trustee for the intended beneficiary in accordance with the terms of the agreement. (*Lauricella* v. *Lauricella,* 161 Cal. 61, 67 [118 P. 430]; *Notten* v. *Mensing, supra* [3 Cal.2d 469, 477]; *Rolls* v. *Allen,* 204 Cal. 604, 607 [269 P. 450]; *Shive* v. *Barrow, supra* [88 Cal.App.2d 838, 843]; *Rogers* v. *Schlotterback,* 167 Cal. 35, 45 [138 P. 738].)

"5. A fiduciary relationship between Katharine Stainback and her aunt, Pearl P. Arbuckle, was clearly shown to exist herein and constitutes basis for the presumption, not overcome in the proofs, of the exercise of undue influence by the niece in securing through a will and grant deeds that which rightfully belonged to plaintiff. (*Estate of Teel,* 25 Cal.2d 520, 528 [154 P.2d 384]; *Brison* v. *Brison,* 75 Cal. 525, 529 [17 P.2d 689, 7 Am.St.Rep. 189].)

"6. The court herein under the foregoing state of facts and law is empowered to impose a constructive trust upon any particular property in the hands of a distributee under a will or a grantee under a deed by the promisor. (*Shive* v. *Barrow, supra,* [88 Cal.App.2d 838, 843] and cases therein cited.)

"7. The incident of the purchase by Pearl P. Arbuckle in 1923 of the Parcel A described in the complaint, and her statements in connection therewith to the plaintiff and his acquiescence therein did not amount to or constitute a novation, but served only to confirm and make more certain the terms of the promise originally made, and without any intention to extinguish the old obligation by substitution of a new obligation (C.C., § 1531).

"8. Herein plaintiff is entitled under his first cause of action to a decree imposing a trust in his favor upon the property described as Parcel A in the complaint herein, to the extent of $30,000, the equivalent of the estate left to Pearl P. Arbuckle by Edith West at her death, and as promised by Pearl P. Arbuckle to plaintiff upon her death. That this decree adjudge that the said sum of $30,000 should be declared a lien

upon said property as security for the satisfaction thereof. (*Ohio Electric Car Co.* v. *Duffet,* 48 Cal.App. 674, 678, 679 [192 P. 298]; *Citizens Bank* v. *Rucker,* 138 Cal. 606 [72 P. 46]; *Brodie* v. *Barnes,* 56 Cal.App.2d 315 [132 P.2d 595].) That unless the said sum of $30,000 be paid to plaintiff by defendant within 90 days from notice of entry of the judgment herein, a commissioner be appointed to sell said property in the usual manner as on execution, and from the proceeds of said sale to deliver to plaintiff the said sum of $30,000 with interest thereon from date of entry of judgment herein at the legal rate of 7 per cent, in full satisfaction and dissolution of said trust and said judgment, and to deliver the balance of said proceeds, after payment of costs and expenses of said sale, to defendant.

"9. Plaintiff's first cause of action is not barred by [the statute of frauds, the statute of limitations, or laches] . . ."

The foregoing answers the contentions made by defendant with respect to the certainty and definiteness of the oral agreement, and the consideration therefor, performance by plaintiff, equitable estoppel, the statute of limitations, the statute of frauds, and laches.

Defendant attacks nine specifically numbered findings, or portions thereof, as being unsupported by the evidence. The attacks are unwarranted. It would serve no useful purpose to tackle each finding and summarize the oral testimony and documentary evidence contained in some 1,490 pages of reporter's transcript. It is enough to say the findings are supported by abundant evidence of a substantial character: The trial court simply accepted and believed the testimony of plaintiff and his witnesses as against defendant and her witnesses, and drew reasonable inferences and conclusions therefrom. The fact that some of the witnesses testified to facts occurring some 30 years ago is of no moment under the circumstances. ▪ The credibility and weight to be given the testimony of the witnesses, and whether such evidence was clear and convincing, was for the trier of fact and is conclusive on appeal.

Defendant says the judgment awarding plaintiff $30,000 and imposing a lien as security for the satisfaction thereof is a judgment at law for money and not a decree in equity; and because the action is not based on a creditor's claim, the judgment is contrary to law.

Defendant misconceives the theory of plaintiff's action. Plaintiff is not asserting a claim against Mrs. Arbuckle's es-

tate but is seeking to enforce by quasi specific performance Mrs. Arbuckle's agreement to make provision for him in her will by having defendant declared an involuntary trustee of the realty, title to which is in her name and which is not a part of Mrs. Arbuckle's estate. His action does not seek a money judgment; it seeks to have the parcel of realty impressed with a constructive trust. ■ The law does not require the presentation of a claim as a condition precedent to the maintenance of an action in quasi specific performance. (*Trower* v. *Young,* 40 Cal.App.2d 539, 542-8 [105 P.2d 160]; *Walker* v. *Calloway,* 99 Cal.App.2d 675, 683 [222 P.2d 455].)

■ According to the facts found, defendant and her parents wrongfully prevented Mrs. Arbuckle from carrying out her agreement to will plaintiff the equivalent of her daughter's estate. The case is therefore a typical one under section 2224 of the Civil Code for the intervention of equity to prevent one who acquires title to property by fraudulent or other wrongful act—here by undue influence—from retaining and enjoying the benefits thereof by declaring the wrongdoer an involuntary trustee of the property for the benefit of the person who would otherwise be entitled to it.

Other specifications of error urged by defendant are palpably without merit and need not be discussed.

■ In his appeal from the judgment, plaintiff contends the trial judge, as a matter of law under the facts found, [1]should have impressed the entire parcel of realty with the trust and decreed a conveyance thereof, together with an accounting for rents and profits. He argues that the $30,000 of Edith's money constituted the "whole of the money paid" for the property and not merely a part thereof because the $27,000 received in the eminent domain proceeding was used by Mrs. Arbuckle to pay the balance of the purchase price. The argument is fallacious. The fallacy is in assuming that the $30,000 belonged to plaintiff at the time of the purchase, and that upon the down payment thereof he acquired an interest in the property. He did not. The agreement which plaintiff made with Mrs. Arbuckle was, as found by the court, that in

[1]". . . that Pearl P. Arbuckle paid a down payment thereon of $30,000, such payment being made by her out of monies derived from the estate of Edith Arbuckle West; that the total purchase price agreed to be paid by Pearl P. Arbuckle for said Parcel 'A' was $57,000; that subsequently and prior to 1930 Pearl P. Arbuckle paid off the entire balance of said purchase price out of monies derived from eminent domain damages awarded to her for the severance from said Parcel 'A' of a portion thereof. . . ."

1917 Mrs. Arbuckle "promised to leave to plaintiff upon her death the equivalent of the estate of Edith Arbuckle West," and that she, in 1923, for "the purpose of rendering more definite and certain the oral agreement of 1917 . . . and relating the same to a specific and identified piece of property *as a source of satisfaction of said agreement* proposed to plaintiff that she utilize monies derived from the estate of Edith Arbuckle West to the extent of $30,000 as down payment, to purchase said Parcel 'A' and to leave said Parcel 'A' in whole or in part to plaintiff on her death, or use it to satisfy her promise, stating that she believed that such purchase and disposition or use of Parcel 'A' by her would be full, fair and reasonable performance on her part of the whole of her promise to him contained in said 1917 oral agreement, and asked him if he, on his part, would agree to accept this proposal as fair and reasonable performance of her obligation to him; that plaintiff accepted said proposal and agreed that the same would constitute fair and reasonable performance by Pearl P. Arbuckle of the whole of her obligations to plaintiff under the 1917 oral agreement; that in the offer and acceptance of the above described proposal Pearl P. Arbuckle and plaintiff intended to and did confirm and make more certain the terms of the promise originally made to plaintiff by Pearl P. Arbuckle in said 1917 oral agreement, and neither Pearl P. Arbuckle nor plaintiff intended nor understood that said promise was or should be modified or changed, or that the obligation of Pearl P. Arbuckle thereunder was or should be superseded by the substitution of a new obligation." (Italics added.) The court further found that the "equivalent of the estate of Edith Arbuckle West" was $30,000.

When Mrs. Arbuckle purchased Parcel "A" in 1923, the agreement was that it be purchased as a "source of" satisfaction, not in satisfaction, of the 1917 agreement. The parties did not intend by the agreement of 1923 that the agreement of 1917 be modified or changed or that the obligation of Mrs. Arbuckle thereunder "be superseded by the substitution of a new obligation." Mrs. Arbuckle's obligation under the agreement of 1917 was to leave the equivalent of Edith Arbuckle West's estate to plaintiff upon her death, and nothing more. Until her death and her failure to perform the agreement of 1917, plaintiff had no cause of action against Mrs. Arbuckle, her estate, or defendant. Since the property which was to be the source of satisfaction of the agreement of 1917 could still be reached by plaintiff after the death of Mrs.

Arbuckle, the imposition of a lien thereon to the extent of the equivalent of the estate of Edith Arbuckle West satisfies Mrs. Arbuckle's obligation in full. (Rest., Restitution, p. 650, § 161; 3 Scott on Trusts, p. 2323, § 463.)

Plaintiff claims the court erred in not awarding him compound interest from the date of death of Mrs. Arbuckle "since defendant was a trustee guilty of abuse of her trust." He argues that a trustee who wilfully converts trust property to his own use is liable for interest from the date of his misconduct. The premise that defendant was guilty of a wilful abuse of her trust is fallacious. The court found defendant had no knowledge of the agreement which Mrs. Arbuckle made with plaintiff. In the absence of such knowledge it cannot be said defendant was guilty of "an abuse of her trust." It is only in cases in which a trustee has been guilty of some positive misconduct or wilful violation of duty that he is charged with compound interest. (*Katz* v. *Enos*, 68 Cal.App.2d 266, 279 [156 P.2d 461].) Civil Code, section 3288, reads: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." "The rule charging . . . [a trustee] with interest is, however, limited to cases in which it is either shown or presumed that the . . . [trustee] has himself profited by his acts, or has been guilty of such willful misfeasance as to justify the court in requiring from him compensation therefor. Whether in any instance the . . . [trustee] is chargeable with even simple interest must be determined by the trial court from all the circumstances of that case." (*Wheeler* v. *Bolton*, 92 Cal. 159, 173 [28 P. 558].) We cannot say, as a matter of law, that the court abused its discretion in awarding interest only from the date of entry of the judgment.

Affirmed. Plaintiff shall bear the cost of his filing fee, his brief and that of defendant on plaintiff's appeal; all other costs of the appeals shall be borne by defendant.

Shinn, P. J., and Wood (Parker), J., concurred.

The opinion and judgment were modified to read as above printed on January 28, 1952. A petition for a rehearing was denied February 15, 1952, and defendant and appellant's petition for a hearing by the Supreme Court was denied March 24, 1952.