[Civ. No. 4769. Fourth Dist. Jan. 21, 1954.]

JOHN RODGERS, Appellant, v. JUNE H. MITCHELL, Individually and as Administratrix, etc., et al., Respondents.

Meyer & Dreizen, N. D. Meyer and Samuel Dreizen for Appellant.

Blodget & Blodget, L. W. Blodget and June E. Blodget for Respondents.

GRIFFIN, J.—Plaintiff and appellant John Rodgers filed this action against the administratrix and heirs of deceased Marie A. Rodgers, to enforce an alleged reciprocal oral agreement between plaintiff and his deceased wife to devise property to him by will and to establish a trust thereon.

He alleged that beginning May 28, 1926, to the date of her death on May 28, 1951, plaintiff and the deceased acquired property in Orange County consisting of a café and motel business, through their joint efforts and capital as well as certain money in two loan associations and certain cash in a bank, all totaling in excess of $13,000. He alleged that deceased orally agreed that the property would be the property of both parties with equal interests, notwithstanding that it, at all times, stood in the name of the deceased.

The testimony shows that plaintiff was managing a little café in San Juan Capistrano. Marie was operating a small café and auto court in Capistrano Beach, located on two lots which were owned by her. They became acquainted. Plaintiff claims that Marie borrowed various small sums of money from him over a period of time, totaling $800, for the purpose of paying some bills in connection with her property; that in about 1926, he went to her place of business to help her operate it; that they lived together as man and wife until 1934, when they were married; that she purchased additional lots in her name and together they erected more cabins and enlarged the business in general; that a bank account was maintained in her name; that the proceeds from the business went into the bank account, and the bills for the improvements and operation of the business were paid from it; that in 1940 or 1941, they separated and Marie brought an action for divorce and alleged that all of the property described in the complaint was her separate property, excepting two automobiles. Mr. Rodgers contested the divorce and particularly asserted his claimed community interest in and to the property described. The court made a finding,

and a final decree, entered May 22, 1941, decreeing that the property here involved and the business operated upon that property was Marie's separate property and that John had no interest in it, and that he was forever barred from asserting title thereto. No appeal was taken from the judgment.

It is plaintiff's claim that during the divorce proceedings he and Marie agreed that she could obtain the divorce and if he would quit his habitual drinking which he had been doing in the past, she would remarry him, and in one year after the interlocutory decree if he had proved "he was a man" they would go back together and she would leave the property "just like it was" in her name and "if we get back together it is still our community property." The trial court specifically found this claim to be untrue. Plaintiff thereafter obtained work in some other locality and Marie visited him there. They were thereafter remarried on September 15, 1941, and John returned to her place of business, but apparently nothing further was done, in reference to title to the described property. They bought a car, title was taken in both names, and they took a trip to Texas. It is plaintiff's claim (and this is the crux of this action) that on their return from this trip they discussed their business affairs and their property, and that he said he would make out a will to her as soon as he returned home and she said she was going to make her will to him and if they had an "accident on the road or anything" they would not "have to worry about anything"; that he said "That's fine," and when they returned home he wrote out his will devising her all of his property, and told her to leave it with her lawyer; that she said she was going to make one and give it to the same lawyer; that thereafter they conducted the business and they filed joint income tax returns; that after Marie's death he destroyed the will he made and found, among her papers, an envelope on which she had written in her own handwriting, the following:

> "Mr. and Mrs. Byram nothing
> Brothers & sister nothing

> "Mr. and Mrs. Bob Tevrey

> Mr. and Mrs. Buster Mitchell
> my personal savings ac.
> Half & Half

Santa Ana & Laguna
Bank that will help
  Pay for their home

---

Johnnie Rodgers all
my property and Bonds
  & Business Bank ac.

(Last Will & Testament)

to all it may
      concerne

Marie A. Rodgers

Don Harwood, Atnny.''

This document was undated, and its probate was rejected. The accountant who made up the returns testified that Marie told him the reason the property was in her name alone was because John's drinking might jeopardize it; that he suggested the joint return because it would minimize the tax; that in 1945 or 1946, they did file separate returns for tax savings purposes and that in 1949, he made out the entire return from the business as being for Marie A. Rodgers, doing business as Marie's Cafe, and that in the last statement made he showed all the property as being Marie Rodgers'. It appears from the evidence that from 1946, until two years before Marie's death, she gave him a check each month for $200, ''because of his drinking habits'' since she did not allow his name to be on the bank account for fear he might draw a check larger than the bank balance. There was testimony that both Mr. and Mrs. Rodgers referred to the property as ''our property'' and that Marie told the witnesses when John first came to her place that she had taken in a partner who had a little money.

On the witness stand Mr. Rodgers denied receiving any consistent payment of $200 per month from Marie, or that she placed any large amount of money at his disposal. His testimony was impeached by a showing of the regular payments of $200 per month made to him by checks over a period of years, and that Marie opened an account and deposited $6,000 in his own name in a loan association account, and a like amount in her name in another loan association account. It further appears that John's excess use of liquor again became a problem and in November, 1949, Marie commenced a second action for divorce against him and again alleged

extreme cruelty and asked that the property here involved be declared her separate property. She became ill and died before any trial was had.

Mr. Rodgers thereafter filed a claim in Marie's estate claiming that from May, 1926, to May 28, 1951, he rendered services for decedent worth $200 per month, and sought $50,000 in payment therefor. In a second claim it is alleged that before May 28, 1926, decedent entered into an oral agreement to employ claimant up to May 28, 1951, as cook, waiter and manager for her place of business, and that $50,000 was due under that agreement. In the probate proceedings he claimed that all the property here described was community property. He now contends that she made an agreement to make a mutual will, as indicated. It does appear that these alleged claims are somewhat inconsistent with each other, and that at least one of them was not true. Defendants were without the benefit of the testimony of the decedent. In order to rebut the claimed oral conversation between her and her husband about the wills, they were compelled to rely upon the circumstantial evidence, and the frailties and inconsistencies in John's testimony. ██ The trial court specifically found that it was untrue that Marie agreed orally, or at all, to make "mutual wills leaving all their property to the other or any mutual wills or any wills of any kind," and found that it was true that plaintiff made a "holographic will bequeathing all his property to Marie A. Rodgers; that it is true that said will was destroyed by plaintiff the day following the death of Marie A. Rodgers; that it is not true that such will was made in pursuance of an oral agreement or any agreement with said Marie A. Rodgers to make a will." It then found that plaintiff was not entitled to have a trust imposed upon the property.

██ It is plaintiff's contention that the uncontradicted evidence shows an agreement to devise the property to him by will, and that the trial court abused its discretion in failing to so find. In support thereof he cites *Notten* v. *Mensing*, 3 Cal.2d 469, 477 [45 P.2d 198], holding that the mere fact of making reciprocal wills is not of itself sufficient evidence of an alleged oral agreement. "However, if such agreement is proved by full, clear and convincing evidence, such agreement should be enforced according to its terms."

It is conceded that the burden of proof of such an oral agreement was upon the plaintiff and until the trial court

was convinced of the making of such agreement by a greater weight of the evidence, plaintiff's claim must fall.

In *Notten* v. *Mensing, supra,* it is said, at page 477: "We are well aware that in such cases the temptation is strong for those who are so inclined to fabricate evidence giving color to the claim that the parties entered into such an oral agreement as is here alleged. On the trial on the merits, the burden rests on the plaintiff to prove the oral agreement by full, clear and convincing evidence." (Citing cases.)

While the purported undated will found in Marie's effects may indicate an intention to make a partial devise of her property to John, it, by its own terms, would not have been a full compliance with the claimed agreement because it would have distributed only a part of her estate to him. Also, it should be noted that there is no indication when that purported will was attempted to be executed. A valid will, devising her entire estate to John, may have been executed at the time of the alleged agreement and subsquently destroyed by the decedent when it was found that her marital difficulties had again arisen.

In *Rolls* v. *Allen,* 204 Cal. 604, 607 [269 P. 450], it was said that in regard to mutual wills, in the absence of a contract, the cases universally hold that either of the comakers may at any time revoke his will; that this principle has found expression in Civil Code, section 1279; that the mere concurrent execution of mutual wills with full knowledge of their contents by both testators is not enough.

In *Lynch* v. *Lichtenthaler,* 85 Cal.App.2d 437 [193 P.2d 77], it was held that there must not only be an agreement, founded upon an adequate consideration and established by the clearest and most convincing evidence, to make reciprocal or mutual wills, but there must also be an agreement *not to revoke* such wills if made.

It is true that the trial judge expressed his sympathy for the husband in his oral opinion, since the husband worked for several years in helping to build the estate which the wife kept in her name, and which she judicially established in 1941 as her separate property in the divorce proceedings. The judge's sympathy alone was not what plaintiff sought. The judge then concluded from a summarization of the evidence that it was "pretty weak," too vague, uncertain, and equivocal to convince him by a preponderance of the evidence that such an agreement was made. In addition, he stated that he did not feel that the "equitable circumstances" were

sufficient to enable him to properly "get around" the rule requiring such an agreement to be in writing.

He properly found that under the circumstances it was not necessary to determine in this action whether the property involved was community or separate property, although he did make an unnecessary finding that Marie and John acquired the property through their joint investment of capital and efforts.

In *La Jolla Casa de Manana* v. *Hopkins*, 98 Cal.App.2d 339, this court said, at page 346 [219 P.2d 871]: "A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. His manner of testifying may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts. . . . Where conflicting inferences may be drawn from testimony, this court is bound by the findings of the trial court as conclusively as in other cases of conflict."

In *In re Jost*, 117 Cal.App.2d 379 [256 P.2d 71], we had before us the claim of an applicant for naturalization that he had met the burden placed upon him to show by clear and convincing evidence that he was entitled to an order of the court admitting him to citizenship. This court held that inasmuch as the trial court passed on the weight of the evidence and credibility of witnesses, its implied findings are conclusive even where the conflict in evidence is not sharp but only such as to create an uncertainty in the judge's mind.

We conclude that no abuse of discretion appears from the finding that the trial court was not sufficiently convinced of plaintiff's claimed oral agreement.

The last point is that although plaintiff may be barred by the statute of frauds (Civ. Code, § 1624, subd. 6) providing that an agreement to devise or bequeath any property or to make any provision for any person by will is invalid unless in writing and subscribed by the party to be charged, nevertheless, under the doctrine of estoppel defendants may not interpose such statute where a fraud is involved. No fraud on the part of Mrs. Rodgers was found or established, and a finding on the question of estoppel was not necessary. *Lynch* v. *Lichtenthaler, supra*, disposes of this argument. There it was said, at page 443:

"The alleged agreement, not being in writing, would have been unenforceable . . . unless the defendants were estopped

724

to plead the statute of frauds.. It is true, as stated by appellant, that the trial court made no finding on the issue of estoppel. In view of the finding of the trial court, however, that there was no oral agreement, which finding was supported by the evidence, the issue regarding estoppel is immaterial and it .was not necessary to make a finding on that issue."

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.